*278 OPINION OF THE COURT
Barbara R Kapnick, J.
Plaintiffs Stephen J. Cossu and Nancy A. Cossu commenced this action against the defendants EMCOR Group, Inc., sued herein as JWP Inc. (EMCOR), and Welsbach Electric Corp., sued herein as JWP Welsbach Electric Corp., formerly known as Welsbach Electric Corp. (Welsbach), seeking to recover damages for personal injuries they allegedly sustained on June 4, 1991, when a street light pole, located at the southeast corner of the intersection of Bank Street and West 4th Street in Manhattan, fell and struck plaintiffs’ moving vehicle.[1]
Defendants now move for summary judgment dismissing plaintiffs’ complaint on the grounds that (1) Welsbach was not a party to a contract for the maintenance of street light poles at the time the accident occurred; (2) Welsbach owed no duty to the general public or to any indeterminate class of persons, including the plaintiffs, to perform its contract with the City to repair and maintain streetlights; and (3) EMCOR is a holding corporation completely separate and distinct from its subsidiary corporation, Welsbach, and has no involvement with Welsbach’s contractual duties with respect to the maintenance and repair of streetlamps.
Plaintiffs oppose the motion and cross-move pursuant to CPLR 3212 (f) and 3214 (b) to lift the stay of disclosure.
There is no dispute that Welsbach and the City of New York entered into a contract with respect to the maintenance of streetlights for the Borough of Manhattan for the period December 31, 1988 through September 30, 1990. The contract was extended through December 31, 1990, but was not subsequently renewed. Thus, Welsbach’s contract with the City of New York had expired more than five months before the happening of plaintiffs’ accident on June 4, 1991.
Plaintiffs, however, argue that discovery may reveal that Welsbach was negligent in failing to properly inspect the relevant street light pole during the period of the contract and to detect rust or corrosion in the base of the pole, and that such negligence could have been a substantial factor in causing the pole to fall.
Defendants, however, contend that even assuming that Welsbach had breached a contractual duty to the City by failing to *279 discover and repair deficiencies in the light pole and/or its base prior to December 31, 1990, Welsbach owed no duty to the general public or to any indeterminate class of persons, including the plaintiffs.
The Court of Appeals has held that "[u]nlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor’s duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration”. (Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 585 [1994].)
Ordinarily, "a contractual obligation, standing alone, will impose a duty only in favor of the promisee [in this case, the City of New York] and intended third-party beneficiaries and mere inaction, without more, establishes only a cause of action for breach of contract”. (Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 226 [1990]; see also, Pizzaro v City of New York, 188 AD2d 591 [2d Dept 1992], lv denied 82 NY2d 656 [1993]; Francois v New York City, 161 AD2d 319 [1st Dept 1990]; Oathout v Johnson, 88 AD2d 1010 [3d Dept 1982].)
"Common-law experience teaches that duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility. These sources contribute to pinpointing and apportioning of societal risks and to an allocation of burdens of loss and reparation on a fair, prudent basis
"Courts traditionally and as part of the common-law process fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.” (Palka v Servicemaster Mgt. Servs. Corp., supra, at 585-586.)
Thus, under certain circumstances, even "parties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted contractual duties”. (Palka v Servicemaster Mgt. Servs. Corp., supra, at 586.) In this case, plaintiffs argue that they should be permitted to sue for tort damages arising out of Welsbach’s contract with the City of New York since the contract contemplated liability claims *280 from third parties and imposed an obligation upon Welsbach to "indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof.” The contract further imposed a duty upon Welsbach to obtain liability insurance.
The moving defendants rely primarily on the Court of Appeals decision in Eaves Brooks Costume Co. (supra), decided in 1990. In that case a commercial tenant whose property was damaged by a malfunctioning sprinkler system brought suit against the company under contract with the building owners to inspect the sprinkler system and against the installer of the fire alarm system. In Eaves Brooks Costume Co., the building owners’ contract with the defendants contained clauses effectively disclaiming liability to third parties such as the plaintiff. The Court of Appeals affirmed the granting of summary judgment for the defendants, noting that it is "the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree’ * * * The courts’ definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied [citations omitted].” (Eaves Brooks Co. v Y.B.H. Realty Corp., supra, at 226-227, citing Strauss v Belle Realty Co., 65 NY2d 399, 402-403 [1985].)
They concluded that the plaintiff and the building owners were both in a better position to know the value of the goods stored in plaintiff’s warehouse, and to negotiate the cost of the lease and limitations on liability accordingly.
Just four years later, in 1994, the Court of Appeals decided the case of Palka v Servicemaster Mgt. Servs. Corp. (supra) upon which plaintiffs rely. In that case, plaintiff Linda Palka, a registered nurse, sustained injuries when an oscillating wall-mounted fan at Ellis Hospital fell on her as she attended to a patient. She sued the company who had contracted with the hospital to develop and implement a maintenance program for the hospital premises, including inspecting the fans and mountings in all rooms. The Supreme Court found in her favor, but was reversed by the Appellate Division, Third Department, which was in turn reversed by the Court of Appeals.
In the instant action, Welsbach was also required to inspect the streetlamps (every 10 days) and to maintain them. It has been said that " '[wjhenever one person is by circumstances placed in such a position with regard to another that every one *281 of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger’ (Heaven v Prender, 11 QBD 503, 509, Britt, MR [1883]).” (Havas v Victory Paper Stock Co., 49 NY2d 381, 386 [1980].)
After reviewing the relevant precedents and principles, the Court of Appeals in Palka (supra) concluded that defendant Servicemaster’s duty extended to the plaintiff because she proved not only that defendant undertook to provide a service to the hospital and did so negligently, but also that its conduct in undertaking that particular service placed plaintiff Palka in an unreasonably risky setting greater than had defendant never ventured into its hospital servicing role at all.
The Court of Appeals went on to state that the Appellate Division in Palka (supra) had overextended the rationale set forth in Eaves Brooks Costume Co. (supra) by reversing the Supreme Court’s decision in favor of plaintiff Palka. First, they found that there were other public policies, factors and analytical considerations involved in a case involving personal injury. The Court also focused on the nature of defendant’s contractual obligation, and found that the defendant ought to have foreseen the likelihood of physical harm to third persons as a result of reasonable reliance on it by the owner to discover or repair dangerous conditions. (Palka v Servicemaster Mgt. Servs. Corp., at 589.)
Pursuant to the terms of its contract with the City, Welsbach assumed a duty to "take all reasonable precautions to protect the persons and property of the City and of others from damage, loss or injury resulting from his or his subcontractor’s operations under this contract” (emphasis added).
Here, as in Palka (supra), the functions to be performed by Welsbach were not directed to a faceless or unlimited universe of persons. Rather, its assumed duty must be extended to non-contracting individuals reasonably within the zone and contemplation of its intended safety services. Welsbach cannot reasonably claim that it was unaware or entitled to be unaware that individuals would expect some entity’s direct responsibility to perform maintenance services with ordinary prudence and care.
While defendants make reference to Cabrera v City of New York (Sup Ct, NY County 1995) based on similar facts, in which the court found for the defendant Welsbach, that decision *282 makes no reference to the Palka decision (supra). More on point is the case of Spooner v National El. Inspection Servs. (161 Misc 2d 73 [Sup Ct, NY County 1994]), decided one day after Palka. The court there held that an elevator inspection company which had contracted with the building owner to inspect the elevators therein owed a duty to users of the elevator to properly perform its inspections.
While plaintiffs will have the burden of demonstrating that Welsbach had exclusive management and control of this particular streetlamp during the relevant time period and that plaintiffs relied on Welsbach’s performance of its contractual obligations to their detriment, these are outstanding questions of fact which the parties should have an opportunity to explore during discovery, which has been stayed during the pendency of this motion.
Accordingly, defendant Welsbach’s motion for summary judgment must be denied at this time. As to EMCOR, its request for summary judgment must also be denied at this time since plaintiff is entitled to discovery to determine whether or not EMCOR, despite its affidavit to the contrary, had any involvement with Welsbach’s contractual duties with respect to the maintenance and repair of the streetlamps.
Thus, the motion for summary judgment is denied and plaintiffs’ cross motion to lift the stay of disclosure is now moot.

. Plaintiffs commenced a separate action against the City of New York, Petrocelli Electric Corp. and Petrocelli Electric Company (index No. 24001/ 92), on the basis of this same incident.