■ CRESVALE INTERNATIONAL, INC., et al., Respondents, v REUTERS AMERICA, INC., et al., Defendants, and 61 BROADWAY ASSOCIATES et al., Appellants. [684 NYS2d 219] —Order, Supreme Court, New York County (Edward Lehner, J.), entered on or about May 16, 1997, which denied the motion of defendants-appellants 61 Broadway Associates and Galbreath Co. and the cross motion of defendant-appellant Madison Building Services, Inc. for summary judgment, unanimously reversed, on the law, without costs, the motion and cross motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of said defendants-appellants dismissing the complaint as against them.

Plaintiffs leased 28th floor office space at 61 Broadway from defendant 61 Broadway Associates (61 Broadway). Defendant The Galbreath Co. (Galbreath) was the managing agent, and defendant Madison Building Services, Inc. (Madison) was hired to perform cleaning and security services. Pursuant to the aforementioned lease, plaintiffs-tenants obtained insurance coverage from Cigna Insurance Company, insuring plaintiffs against loss and damage to property at the subject building, as well as for business interruption losses.

The lease also included a waiver of subrogation clause

whereby the parties agreed that "the insurance companies waive subrogation or consent to a waiver of right of recovery, and each party hereby agrees that it will not make any claim against or seek to recover from the other *for any loss or damage to its property or the property of others resulting from fire or other hazards covered by such fire and extended coverage insurance*" (emphasis added). The clause further provided that the landlord was not required to obtain "insurance against interruption of Tenant's business."

On April 20, 1990, an employee of defendant Madison was cleaning the 28th floor when she observed smoke in one of the offices. Instead of pulling a fire alarm located on that floor, the employee immediately took the elevator down to the lobby and informed the security guard, also a Madison employee, to call the Fire Department. According to the cleaning employee's deposition testimony, the security guard looked at her like she was "crazy." The employee further testified that she observed the smoke at approximately 11:00 P.M. Fire Department records reveal that the first report was received at 11:12 P.M. Plaintiffs suffered substantial losses as a result of the fire, including business interruption losses. Cigna paid $1,200,000 on the claim, $850,000 of which was purportedly for business interruption losses.

In January 1994, Cigna commenced this action as plaintiffs' subrogee to recover the amounts paid on the claim. The IAS Court denied in part 61 Broadway's and Galbreath's motion for summary judgment on the basis that the waiver of subrogation clause was limited by its terms to claims for property damages, and therefore did not operate as a waiver of plaintiffs' claims for business interruption losses. The court also denied Madison's motion for summary judgment, finding that triable issues of fact existed as to whether and to what extent Madison had a contractual duty to perform fire prevention services, and if it had such a duty, whether its employees negligently caused or aggravated plaintiffs' damages by failing to report the fire in a timely manner.

Madison's motion for summary judgment should have been granted. Plaintiffs allege that Madison had a duty under the Madison-61 Broadway contract to perform basic fire prevention duties, and its employees breached that duty. Madison counters that it had no such contractual or common-law duties, and, in any event, it owed no duty to plaintiffs, who were noncontracting parties.

"[A] duty of reasonable care owed by a tortfeasor to an injured party is elemental to any recovery in negligence" (*Palka*

*v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 584), and the existence and scope of such duty is a legal issue for the court (*supra*, at 585; *Egan v Omniflight Helicopters*, 224 AD2d 653). A breach of a contractual obligation will give rise to tort liability vis-à-vis injured third parties only in limited circumstances (*see*, *Palka v Servicemaster Mgt. Servs. Corp., supra*, at 586-587; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226). To avoid potentially limitless liability arising out of contractual breaches, injured noncontracting parties must show that "performance of contractual obligations has induced [their] detrimental reliance on continued performance [by the contracting parties] and inaction would result not 'merely in withholding a benefit, but positively or actively in working an injury' (*Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167)." (*Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra*, at 226.) Further, the nexus between the defendant's contractual obligation and the noncontracting plaintiff's reliance and injury "must be direct and demonstrable, not incidental or merely collateral" before a tort duty arises (*Palka v Servicemaster Mgt. Servs. Corp., supra*, at 587).

Contrary to the IAS Court's conclusion, Madison's purported breach of the Madison-61 Broadway contract affords no basis to hold Madison liable to the plaintiffs. The record establishes that the contract required Madison to perform cleaning and security services. There is no mention of any fire fighting or fire prevention duties required of Madison. Plaintiffs point to the listing of the security guard's name in the building regulations as the evacuation supervisor, and the managing agent's deposition testimony that it was "understood" that all building employees had fire prevention responsibilities, as evidence of Madison's assumption of fire prevention duties. However, these "duties" are not derived from the Madison-61 Broadway contract; rather, they exist as a common responsibility shared by all building tenants and employees to promptly report a fire. At best, plaintiffs' evidence establishes an incidental or collateral connection between Madison's contractual duties and plaintiffs' fire-related injuries.

Madison's limited contractual undertaking to supply cleaning and security services bears no resemblance to the "comprehensive and exclusive" management contract at issue in *Palka v Servicemaster Mgt. Servs. Corp.* (*supra*, at 588). In *Palka* (*supra*), the Court of Appeals found that a management company could be liable in tort to an injured plaintiff, who was not a contracting party, based on a breach of its duties under the management contract. The management contract in *Palka*

required the defendant company to perform all management services, including the supervision and training of all building employees involved in maintenance and support services. Further, the plaintiff in *Palka* was injured when a wall-mounted fan fell on her due to faulty maintenance and inspection, duties which plainly fell within the maintenance company's contract. Here, Madison's contractual undertaking was much narrower and its duties were unrelated to the type of injury suffered.

Given Madison's limited contractual duties, it cannot be said that plaintiffs relied to their detriment on Madison's performance of fire prevention duties (*see, Keshavarz v Murphy*, 242 AD2d 680, 681). Clearly, there was no "direct and demonstrable" nexus between Madison's contractual duties and plaintiffs' reliance and injury (*Palka v Servicemaster Mgt. Servs. Corp., supra,* at 587; *Neil v City of New York*, 227 AD2d 260, 261). As Madison assumed no special duty of care to plaintiffs, "the imposition of liability against it would contravene sound public policy governing the orbit of duty owed to noncontracting parties" (*Rudel v National Jewelry Exch. Co.*, 213 AD2d 301).

On 61 Broadway's and Galbreath's appeal, we disagree with the IAS Court's conclusion that the waiver of subrogation clause in the subject lease did not extend to claims for business interruption losses. Where a waiver of subrogation clause is limited to a specific type of loss, a subrogation action is barred only to the extent its seeks recovery for those species of losses (*Kaf-Kaf, Inc. 'v Rodless Decorations*, 90 NY2d 654, 660 ["a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears"]). Conversely, where a broad waiver clause extends to all losses covered by the policy, or where subrogation action is "inconsistent with the express provisions of the waiver of subrogation clause", all subrogation actions will be barred (*supra,* at 660-661).

Here, the waiver clause applied to "any loss *or* damage to [tenant's] property * * * resulting from fire or other hazards covered by such fire and extended insurance coverage" (emphasis added). Although plaintiff construes this phrase as limiting the waiver to claims for property damages, we conclude that the use of the words "any loss", followed by the disjunctive "or," requires a much broader reading (*see, Coutu v Exchange Ins. Co.*, 174 AD2d 241, 243 [where two words in exclusion clause stated in disjunctive, they must be separately considered]). As with the waiver provision in *Kaf-Kaf (supra)*, we construe the waiver of subrogation clause as extending to "any" loss covered under the policy (*see also, Federal Ins. Co v*

*Honeywell, Inc.*, 243 AD2d 605). Although the lease in this case did not require it, the Cigna policy expressly covered business interruption losses (*cf., Periphery Loungewear v Kantron Roofing Corp.*, 190 AD2d 457, 460). Accordingly, since the business interruption losses fell within the broad definition in the waiver of subrogation clause in the parties' lease, those claims are barred.

Additionally, the waiver provision expressly provided that the landlord, 61 Broadway, was not required to obtain insurance against the interruption of the tenant's business. The clear import of this lease provision, and the provision requiring the tenant to obtain insurance, is that the landlord would not be liable for the tenant's business losses in the event an insurable event occurs. Thus, plaintiffs' attempt to recover from 61 Broadway for business interruption losses "is inconsistent with the express provisions of the waiver of subrogation clause" (*Kaf-Kaf, Inc. v Rodless Decorations, supra,* at 660-661; *see also, Periphery Loungewear v Kantron Roofing Corp., supra,* at 461), and is barred thereby. Concur—Sullivan, J. P., Rosenberger, Wallach, Mazzarelli and Andrias, JJ.