[772 NYS2d 14]

Jose Fernandez, Respondent, v Otis Elevator Company, Appellant, et al., Defendant.

First Department, February 3, 2004

### APPEARANCES OF COUNSEL

*Law Office of Laurence J. Sass* and *Shandell, Blitz, Blitz & Bookson, LLP (Laurence J. Sass* and *Arthur Blitz* of counsel), for respondent.

*Geringer & Dolan LLP (John A. McCarthy* and *Pauline A. Mason* of counsel), for appellant.

### OPINION OF THE COURT

MAZZARELLI, J.

Plaintiff, a janitor employed by the College of Mount Saint Vincent (the college), was injured when he fell down an elevator shaft in one of the college's dormitories. The elevator had become stuck between the second and third floors of the building. Just prior to the accident, plaintiff alleges he was attempting to close a hoistway door in the shaft of the second floor of the building. Defendant Otis Elevator Company (Otis) asserts that plaintiff was trying to climb out of the elevator by wiggling through an eight-inch opening at his feet.

The elevator was installed in 1923 and had a collapsible, manually operated car gate attached to the elevator car. Each floor also had a manual hoistway door with two separate locks. To open the hoistway door from inside the elevator, the car gate

had to first be opened. A bar on the inside of the hoistway door then had to be pulled down, to unlock and allow the door to slide open. It is uncontested that this elevator did not have a toe guard[1] or a door restrictor.[2]

It is also undisputed that the elevator stalled because a "contact" within a device called a reverse phase relay (RPR) malfunctioned. The RPR is part of the elevator controller, and is designed to insure that the correct amount of voltage is supplied to the elevator. When the contact failed, it precluded the flow of electricity, preventing the elevator from moving. The RPR on the elevator at the time of the incident was part of the original 1923 installation, and had never been replaced.

Plaintiff brought this action against Otis and 6300 Riverdale Owner Corp. The claims against Otis allege common-law negligence, strict products liability and failure to warn. 6300 Riverdale Owner Corp. did not appear in the action, and Otis moved for summary judgment. In support of its motion, Otis presented its contract with the college, a type of agreement commonly known as an "oil, grease and survey" contract. The agreement required that Otis regularly conduct service examinations, clean the elevator, lubricate certain components, and make minor adjustments. The replacement of the RPR was not part of Otis's contractual duties. Moreover, the contract did not require Otis to install additional safety devices such as a toe guard.

In further support of the motion, Otis proffered a number of affidavits and excerpts from deposition testimony showing that it had recommended that the college update the elevators. These establish that in 1990, Otis informed the college that the elevator controller needed to be replaced. Otis also submitted a copy of a 1996 proposal for modernization of a number of the elevators at the college. Included too was an affidavit from one of Otis's inspectors stating that on June 13, 2000 he specifically told his supervisor that the RPR in this elevator needed to be

---

**1.** A toe guard is a device which would have been placed at the floor of the elevator to prevent a person from falling into the elevator shaft. When the elevator was installed, this device was not yet available.

**2.** The door restrictor is a device presently required in elevators. It is designed to prevent the opening of an elevator door if the car is located a certain distance above or below the floor opening. However, this elevator was designed and installed before a 1980 regulation requiring door restrictors, and the regulation has a grandfather clause which exempts pre-1980 elevators from its requirements. Further, this elevator had a manually operated, collapsible car gate, and door restrictors cannot be used with car gates.

replaced. In another affidavit, an Otis maintenance supervisor swore that he discussed both the modernization proposal and the replacement of the RPR with the current and former facilities managers at the college, but that the college would not budget the money needed to modernize the elevators.

In another affidavit, an Otis mechanic recounted that on August 11, 2000, three days before this accident, he responded to a service call that the elevator was stuck between floors. The mechanic adjusted the RPR and cleaned the contacts on it, so that the elevator could operate. He also noted that the RPR was old, worn out, and had to be replaced. He stated that he reported to the director of facilities that he was not sure how long his repair of the old RPR would last, and that the director approved ordering a new RPR. He estimated that it would take about a week to get a new RPR, but that in the meantime, the director of facilities indicated that the college needed the elevator to remain in service.

In the order appealed, the IAS court denied that portion of Otis's summary judgment motion which sought dismissal of the negligence and products liability claims, and granted defendant dismissal of plaintiff's claim for failure to warn. The court found that an issue of fact as to whether plaintiff intentionally slid out of the elevator, or whether he inadvertently fell, precluded summary resolution of the common-law negligence claim. With respect to the products liability claim, the court held that Otis had not made a prima facie showing that its parts were not defective in 1923, and that there was an issue as to whether plaintiff had misused the product by consciously bypassing built-in safety features.

Because we find that Otis had no duty to plaintiff, we dismiss the common-law negligence claim. In addition, because the elevator was not defective at the time of its manufacture in 1923, we dismiss plaintiff's products liability claim.

The dispositive issue as to plaintiff's common-law negligence claim is whether Otis, by entering into an elevator maintenance contract with the college, owed plaintiff a duty of care (*see Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585-586 [1994]; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226-227 [1990]). The definition of the existence and scope of an alleged tortfeasor's duty is a question of law for the courts, involving consideration of matters including public policy and contractual assumptions of responsibility (*Palka, supra* at 585).

While "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal v*

*Melville Snow Contrs.*, 98 NY2d 136, 138 [2002] [citation omitted]), the Court of Appeals has identified three circumstances in which a duty of care to noncontracting third parties may arise out of the contractual obligation or the performance thereof (*Espinal, supra* at 140). Those are: (1) where the contracting party, in failing to exercise reasonable care in the execution of the contract, creates an unreasonable risk of harm to others, or exacerbates that risk; (2) where a plaintiff detrimentally relies on the defendant's continued performance of a contractual obligation; and (3) where the contracting party comprehensively agrees to assume and displace the promisee's safety-related obligations (*id.*).

None of these exceptions applies to these facts. First, there is no evidence that Otis created or exacerbated any risk to plaintiff by failing to adequately perform its obligations under its service contract with the college. In support of its motion, Otis submitted evidence showing that it complied with the terms of the contract, that it recommended modernization of the elevator systems, and that it repeatedly advised the college that the RPR had to be replaced. The contract did not allow Otis to replace the RPR without the college's authorization, which was not given in time to prevent plaintiff's accident (*see Samuel v Braun El. Consultants*, 204 AD2d 176 [1994] [owner had responsibility for determining which repairs it would undertake, including repair of the device which was alleged to have caused plaintiff's injuries]).

The second and third exceptions are similarly inapplicable. With respect to the second exception, plaintiff has made no claim that he was injured as a result of reasonable reliance upon Otis's performance under the contract (*compare Abato v Millar El. Serv. Co.*, 298 AD2d 884 [2002] [issue of fact as to whether elevator service company breached its duty to perform proper inspections]). As to the third exception, the terms and conditions of the limited service agreement establish that the contract was not a comprehensive assumption of all of the college's safety-related obligations with respect to the elevator from which this plaintiff fell (*compare Palka, supra* at 586; *see Salas v Otis El. Co.*, 234 AD2d 356 [1996] [elevator service contract did not cover the maintenance, inspection or repair of interior wall panels]; *Lorenz v 575 Fifth Ave. Assoc.*, 187 AD2d 274 [1992] [limited elevator maintenance contract did not cover loosened ceiling tile which fell and injured plaintiff]).

We also dismiss plaintiff's products liability claim because the record contains no evidence that the elevator was defective at

the time of its 1923 manufacture due to a mistake in manufacturing, an improper design, or the inadequacy of warnings for its use (*Rosado v Proctor & Schwartz*, 66 NY2d 21, 25 [1985]; *compare Potaczala v Fitzsimmons*, 171 AD2d 1015, 1016-1017 [1991] [Otis "fail(ed) to show that (its) elevator had been appropriately designed, manufactured and installed consistent with safety standards and the state of the art at the time of manufacture and sale"]). At the time of this elevator's installation, the elevator had appropriate locking systems for the doors on each floor, it was properly equipped with a car gate, door restrictors were neither required nor feasible on an elevator with a car gate, and toe guards were not yet available. "That defendant[ ] both supplied the elevator and serviced it after installation would not impose upon [it] strict liability for a defect which developed after installation was completed" (*Steckal v Haughton El. Co.*, 59 NY2d 628, 629 [1983]).

Accordingly, the order of the Supreme Court, New York County (Louise Gruner Gans, J.), entered March 19, 2003, which, upon the grant of defendant Otis's motion for reargument, to the extent appealed from, denied Otis's motion for summary judgment dismissing the causes of action for negligence and products liability, should be reversed, on the law, without costs, the motion granted in its entirety and the remainder of the complaint dismissed. The Clerk is directed to enter judgment accordingly.

BUCKLEY, P.J., ANDRIAS, SULLIVAN and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered March 19, 2003, reversed, on the law, without costs, the motion for summary judgment dismissing the causes of action for negligence and products liability granted in its entirety and the remainder of the complaint dismissed. The Clerk is directed to enter judgment accordingly.