[817 NYS2d 33]

ADNAN RAHIM, Respondent, v SOTTILE SECURITY COMPANY, Appellant.

First Department, June 15, 2006

### APPEARANCES OF COUNSEL

*Armienti DeBellis & Whiten, LLP,* New York City *(Vanessa M. Corchia* of counsel), for appellant.

*Schwartz Grossman, LLP,* New York City *(Brett M. Grossman* of counsel), for respondent.

### OPINION OF THE COURT

FRIEDMAN, J.

At approximately 11:00 P.M. on November 2, 2001, plaintiff, the assistant manager of a Duane Reade store in Manhattan, was assaulted by a trespasser who apparently had remained in the store after closing. In this action, plaintiff seeks to recover for his resulting injuries from defendant Sottile Security Company (Sottile), an agency Duane Reade had retained to provide security services at its stores. For the reasons discussed below, we hold, following the Court of Appeals' analysis in *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]), that, on this record, as a matter of law, Sottile did not owe plaintiff a duty of care in the performance of its contract with Duane Reade. We therefore reverse the order appealed from, and grant Sottile's motion for summary judgment dismissing the complaint.

Under the agreement between Duane Reade and Sottile, dated January 21, 2001, Sottile agreed "to furnish Security Officer service" at multiple sites. Paragraph 7 of the agreement provided that the security guards to be provided by Sottile "shall perform such services as agreed upon by Sottile and the Client," which services were not further detailed. Paragraph 9 provided that Sottile made "no warranty, express or otherwise, that the services furnished will avert or prevent occurrences or consequences therefrom." Finally, and of greatest significance to this case, paragraph 10 provided: "It is expressly understood and agreed that this contract is entered into solely for the mutual benefit of the parties herein and that no benefits, rights, duties, or obligations are intended or created by this contract as to third parties not a signatory [*sic*] hereto."

According to plaintiff's testimony, the Sottile security guard assigned to the store in question was stationed at the entrance, where he would watch people as they entered, as well as an

electronic surveillance monitor. In addition, the guard would walk through the store every four hours. Just before closing time (which was 10:30 P.M. on weekdays), the guard would check to make sure that no customers remained, and then he would leave. The guard did not have keys to the store, and was not responsible for locking up at night, which was plaintiff's task. Plaintiff would remain in the store at least half an hour after closing.

Plaintiff testified that it was his understanding that the purpose of the guard's presence was to watch for shoplifters. Further, plaintiff admitted that no one had ever told him that the guard was there to protect him personally. It should also be noted that the guard performed his duties unarmed.

Plaintiff testified that, on the night of November 2, 2001, the security guard (whose name was Opoku Nti) left the store at 10:10 P.M., which was 20 minutes before closing. According to plaintiff, when Nti advised him that he was leaving early, plaintiff told him, "You can't do that, you have to stay until closing time." Nti allegedly responded, "I have to go. I have to do something important." At his deposition, plaintiff testified that he did not know whether Nti checked the store before he left that night, but plaintiff's written corrections to the transcript indicate that Nti did not check the store before leaving. Nti, for his part, testified that he stayed until 10:30 that night, and left only after checking the store.

According to plaintiff, four employees beside himself remained in the store after closing on the night of the incident. These employees left the store just before 11:00 P.M., and plaintiff, who was staying to complete some paperwork, locked the door after they left. Thereafter, plaintiff was attacked by a person he had not known was in the store. Plaintiff recognized his assailant as Oulimata Kane, a former employee he had fired (for allegedly stealing batteries) a few months before. While the attack was ongoing, plaintiff summoned the police by pressing a button on a device he wore around his neck. Although neither plaintiff nor Nti knew how or when Kane had entered the store, Kane told the police that she had entered the store at 10:20 P.M., hid in the back, and then accosted plaintiff after closing.

In determining whether plaintiff is entitled to take his negligence case against Sottile to trial, the "threshold question . . . is whether [Sottile] owed a duty of care to [plaintiff]" (*Espinal*, 98 NY2d at 138). To answer this question, we first look to the above-quoted paragraph 10 of the agreement between Du-

ane Reade and Sottile. Again, that provision expressly excludes any possible implication that any "benefits, rights, duties, or obligations are intended or created by this contract as to third parties not a signatory [*sic*] hereto." Thus, plaintiff was not an intended third-party beneficiary of Sottile's contract with his employer.

As the Court of Appeals has stated, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*id.*). The foregoing principle has been applied numerous times in actions against security companies (*see Anokye v 240 E. 175th St. Hous. Dev. Fund Corp.*, 16 AD3d 287, 288 [2005]; *Dabbs v Aron Sec., Inc.*, 12 AD3d 396, 397 [2004]; *Four Aces Jewelry Corp. v Smith*, 257 AD2d 510, 511 [1999]; *Gonzalez v National Corp. for Hous. Partnerships*, 255 AD2d 151, 152 [1998], *lv denied* 93 NY2d 812 [1999]; *Pagan v Hampton Houses*, 187 AD2d 325, 325 [1992]; *Bernal v Pinkerton's, Inc.*, 52 AD2d 760, 760-761 [1976], *affd* 41 NY2d 938 [1977]). Accordingly, since plaintiff was neither a party to Sottile's contract nor an intended third-party beneficiary thereof, we must look beyond the contract to determine whether there is evidence of any circumstances that, under applicable precedent, could support a finding that Sottile owed plaintiff a duty of care.

In *Espinal*, the Court of Appeals observed that its prior decisions

> "identify three situations in which a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be potentially liable in tort—to third persons [other than intended third-party beneficiaries]: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm' (*Moch [Co. v Rensselaer Water Co.*, 247 NY 160, 168 (1928)]); (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties (*see Eaves Brooks [Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 (1990)]) and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely (*see Palka [v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 589 (1994)])." (*Espinal*, 98 NY2d at 140.)

For present purposes, we assume that it could reasonably be found that Nti, the Sottile security guard, failed to carry out all his duties on the night of the incident, and that such failure was causally related to the perpetration of the assault. Even when plaintiff is given the benefit of this assumption, however, the record affords no basis for finding that any of the three situations recognized in *Espinal* existed here.

Turning to the first potential basis for liability referred to in *Espinal*, it is clear that, however negligently Nti may have performed his job, he did not "launch[ ] [the] force or instrument of harm" (*Moch*, 247 NY at 168) that effected the assault. That "force or instrument of harm" was Kane, a third person who, so far as the record shows, acted independently, and without Nti's knowledge. While Nti may have been negligent in failing to discover Kane before she acted, the "dangerous condition" represented by her presence plainly was not "create[d] or exacerbate[d]" by Nti (*Espinal*, 98 NY2d at 142). Nti's "inaction [was] at most a refusal to become an instrument for good" (*Moch*, 247 NY at 168), and such inaction provides no basis for holding Nti's employer liable to a person with whom it was not in contractual privity.

Neither does the record provide any basis for finding that plaintiff was injured as a result of his "detrimental[ ] reli-[ance] on the continued performance of [Sottile's] duties" under its contract with Duane Reade (*Espinal*, 98 NY2d at 140, citing *Eaves Brooks*, 76 NY2d at 226). In fact, plaintiff's own testimony negates any claim that, on the night of the incident, he relied on Nti to ensure that all customers had left the store prior to closing. This is because plaintiff himself testified that he knew (having been informed in advance by Nti) that Nti had left the store 20 minutes before closing that night. Plaintiff further testified (as clarified by his correction of the deposition transcript) that he also knew that Nti had left without first checking to make sure that all customers were gone. Given this testimony, at no point after Nti left the store at 10:10 P.M. (assuming this is what happened) could plaintiff have been acting in reliance on Nti's performance of tasks plaintiff in fact knew that Nti had left undone. Thus, as a matter of law, plaintiff will not be able to show that, as a result of Sottile's prior provision of security services, "he was lulled into a false sense of security" (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 522 [1980]) that led him to fail to take steps himself to ensure that all customers had left prior to closing. Stated

otherwise, Nti's alleged negligence on the night in question, of which plaintiff claims to have been fully aware at the time, did not "place[ ] plaintiff . . . in a more vulnerable position than he would have been in had [Sottile] never" provided security at the store (id.).

Finally, the record also fails to provide any basis for holding Sottile liable to plaintiff pursuant to the third scenario noted in *Espinal*, namely, one "where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (98 NY2d at 140, citing *Palka*, 83 NY2d at 589). This sort of situation exists only where the defendant has, by contract, "entirely absorb[ed]" the other party's duty to maintain safe conditions on the subject premises (*Espinal*, 98 NY2d at 141). In this case, there is no basis for finding that Sottile comprehensively absorbed Duane Reade's common-law duty to secure the premises against intruders and violent wrongdoers (assuming Duane Reade had such a duty).* Although the contract does not describe the duties of the unarmed Sottile security guards in detail, that those duties were not " 'comprehensive and exclusive' " (98 NY2d at 141, quoting *Palka*, 83 NY2d at 588) is evident from the testimony of both plaintiff and Nti. For example, Nti testified, without contradiction, that the store was open, with no security guard on duty, before his shift began at noon. Plaintiff testified that he and other employees remained in the store after closing, when there was no security guard on duty, and that he (plaintiff) was responsible for locking up the store, not the security guard (who was not even given a key). Plaintiff further testified that, in the event the security guard caught a person stealing, he was required to notify plaintiff or the manager, rather than deal with the situation on his own. In a similar vein, plaintiff testified that he would take the guard's post at the store's entrance while the guard was taking a break.

Since the foregoing is sufficient to require us to reverse and grant summary judgment dismissing the complaint, we need not reach Sottile's remaining contentions.

---

* Given plaintiff's testimony that, so far as he knew, no robberies, assaults, physical altercations, or incidents involving threats of physical violence had taken place within the store prior to the subject incident, it is not clear that Duane Reade had any common-law duty to provide security against the occurrence of such incidents (*see Nallan*, 50 NY2d at 519-520).

Accordingly, the order of the Supreme Court, New York County (Sherry Klein Heitler, J.), entered April 6, 2005, which denied defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

MAZZARELLI, J.P., MARLOW AND NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered April 6, 2005, reversed, on the law, without costs, and defendant's motion for summary judgment granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.