XX v Dunwell El. Elec. Indus., Inc. (2020 NY Slip Op 06376)





XX v Dunwell El. Elec. Indus., Inc.


2020 NY Slip Op 06376


Decided on November 05, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 05, 2020

Before: Acosta, P.J., Singh, Kennedy, Shulman, JJ. 


Index No. 160585/14 Appeal No. 12290 Case No. 2019-04705 

[*1]XX, etc., et al., Plaintiffs-Appellants,
v
Dunwell Elevator Electrical Industries, Inc., et al., Defendants-Appellants, Synoptic Management Corp., Defendant-Respondent. [And a Third-Party Action.]
Dunwell Electrical Industries, Inc., Second Third-Party Plaintiff,
v
Teresa Daly, Second Third-Party Defendant.


Gair, Gair, Conason, Rubinowitz Bloom, Hershenhorn, Steigman & Mackauf, New York (Richard M. Steigman of counsel), for XX and Chan Suh, appellants.
Gottlieb Siegal & Schwartz, LLP, New York (Lauren M. Solari of counsel), for Dunwell Elevator Electrical Industries, Inc., appellant.
Milber Makris Plousadis & Seiden, LLP, Woodbury (Lorin A. Donnelly of counsel), for Recherche Realty Inc., appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Patrick J. Lawless and Ian Marc Elie Herman of counsel), for respondent.



Order, Supreme Court, New York County (Carol R. Edmead, J.), entered October 17, 2019, which granted the motion of defendant/third-party plaintiff Synoptic Management Corp. (Synoptic) for summary judgment dismissing the complaint and all cross claims as against it, unanimously modified, on the law, and the motion denied except to the extent of dismissing defendant Dunwell Elevator Electrical Industries, Inc.'s (Dunwell) cross claim against Synoptic for contractual indemnification, and otherwise affirmed, without costs.
Plaintiffs commenced this action to recover for personal injuries allegedly sustained by the infant plaintiff (plaintiff) after she fell down an elevator shaft in the cooperative apartment building in which her family resided when the elevator shaftway door opened while the cab was on a different floor. Plaintiff's accident occurred when she backed into the elevator shaft in the building's lobby without the cab there after her nanny had used a "drop key" to unlock the shaft door. The drop key was left accessible on a ledge in the building lobby so residents could open the shaft door to access the elevator.
Robert DelCastillo, a New York City elevator inspector, inspected the elevator in December 2013, three months before the accident, and issued a violation. He testified that, pursuant to code, such an elevator may only be operated by a trained and qualified operator with no passengers other than those transporting freight, and access to drop keys was restricted to qualified elevator personnel and to building owners, who were required to keep them secured behind a locked panel for emergency use only. DelCastillo found that the elevator shaftway door did not have an operable parking device, which prevents the door from being unlocked with a drop key if the elevator cab is not present on that floor.
The building was owned by defendant Recherche Realty (owner) and managed by defendant Synoptic. Defendant Dunwell had entered into an elevator service contract to maintain the elevator.
Pursuant to its management agreement with the owner, Synoptic agreed to "provide advice and consultation based upon its expertise in the field of property management . . . and do all things reasonably deemed necessary or desirable by the Owner[] for the proper management of the Building." The agreement required Synoptic to:
At Owner's sole cost and expense, [to] cause the Building to be maintained in such condition as may be deemed necessary or advisable by the Owner, upon advice and consultation with the Agent . . . and cause repairs and alterations of the Building to be made, including . . . electrical, plumbing, steamfitting, carpentry, masonry, elevator, decorating and such other incidental alterations or changes therein as may be proper or desirable.
Additionally, Synoptic was required to recommend and, with the approval of owner's board, cause to be done all things necessary to comply with governmental orders and violations, establish and coordinate with contractors' annual or regular inspections when customarily required to maintain the building, and inspect the property monthly and advise regarding required or recommended repairs. Ordinary repairs costing more than $1,000 required owner's approval, but Synoptic was to cause to be made or remedied without first seeking owner's approval ordinary repairs costing less, emergency repairs necessary for the preservation or safety of the building or persons or to maintain services, and outstanding violations of government orders. In addition, Synoptic was required to hire employees necessary to maintain and operate the building, negotiate contracts for utilities and services with the board's approval, purchase supplies, and advise owner regarding proper insurance.
Synoptic's president, David Steinberg, acknowledged that the owner was relying on Synoptic for advice and consultation in managing the building. In preparation for board meetings with clients, including owner, it prepared management reports providing an overviews of the building finances, repairs and maintenance, any sales, and any building code violations. Steinberg acknowledged that after work is performed to cure a violation, Synoptic would normally visit the premises to ensure the work had been completed but he did not know whether that happened with Dunwell's work to cure the violation here.
Based on deposition testimony of others, including the owner's board president and plaintiffs, the owner hired Synoptic with the understanding that it would run the building on a daily basis, including handling any issues with the elevator.
Synoptics's contention that, as a matter of law, it did not completely displace defendant owner Recherche Realty Inc.'s duty to maintain the premises safely is unavailing. A contracting party may not be liable in tort to a noncontracting third-party for its negligent performance unless it launches a force or instrument of harm by creating or exacerbating an unreasonable risk of harm, the noncontracting third party detrimentally relies on its performances, or it completely displaces the other party's duty to maintain premises safely (Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). The management agreement obligated Synoptic to, inter alia, ensure the building was maintained, repairs and alterations were performed, and violations were remedied. It was also to inspect the building monthly to advise as to required and recommended repairs, coordinate with contractors for regular inspections customarily required to maintain the building, hire employees necessary to maintain and operate the building, and purchase supplies. It further had the authority to undertake emergency repairs and outstanding violations, including with regard to the elevator, without Recherche's approval (see Ileiwat v PS Mercado El. Co., Inc., 178 AD3d 517, 518-519 [1st Dept 2019]; Stevanovic v T.U.C. Mgt. Co., 305 AD2d 133, 134 [1st Dept 2003]; see also Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579 [1994]; cf. Vushaj v Insignia Residential Group, Inc., 50 AD3d 393, 394 [1st Dept 2008]). In fact, the owner's board president testified that when she informed Steinberg that the board had authorized the repairs listed, which cost more than $1,000, he responded that he had already approved them because the repairs needed to get started. Whether Synoptic made the repairs itself or was qualified to do so is irrelevant as to whether it owed plaintiff a duty. Rather its duty arises from its contractual obligation under the comprehensive management agreement obligating it to, inter alia, maintain the property and cause needed repairs to the elevator (see Palka at 587-589; see generally Espinal at 140).
Here, issues of fact exist as to whether plaintiffs detrimentally relied on Synoptic to perform its contractual duties to maintain, cause repairs to be made to, and correct violations regarding the elevator (McDonald v M.J. Peterson Dev. Corp., 269 AD2d 734 [4th Dept 2000]), and whether Synoptic launched a force of harm by providing residents access to the drop key to use the freight elevator (see Espinal at 140). According to Steinberg's deposition, Synoptic had notice that residents were using the drop key to access the freight elevator. Further, at the very least, issues of fact exist as to whether it had notice that the repairs to address the violation were never completed.
Contrary to Synoptics's contention, the infant plaintiff stepping into the elevator shaft without looking was not an intervening, superseding cause of the accident as a matter of law, but rather a question of fact exists as to whether it was a reasonably foreseeable danger from providing residents a drop key that could open the shaftway door without the elevator present (see generally Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]; cf. Kolb v Beechwood Sedgewick LLC, 78 AD3d 481 [1st Dept 2010]).
Because issues of fact exist regarding Synoptic's culpability, it is not entitled to dismissal of the common-law indemnification and contributions cross claims against it. Moreover, since issues exist regarding whether it failed to perform its obligations under the management agreement, it is not entitled to dismissal of the owner's contractual indemnification cross claim against it, and it failed to prima facie establish entitlement to summary judgment dismissing the owner's cross claim against it for breach of contract to procure insurance.
Synoptic is, however, entitled to dismissal of Dunwell's contractual indemnification cross claim against it because there was no contract between them.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 5, 2020