[714 NYS2d 575]

JAMES C. CHAPMAN et al., Individually and as Parents and Guardians of JAQUAN CHAPMAN, an Infant, Respondents, v DENNIS SILBER et al., Appellants.

Third Department, October 26, 2000

## APPEARANCES OF COUNSEL

*Horigan, Horigan, Lombardo & Kelly, P. C.,* Amsterdam (*Derek L. Hayden* of counsel), for Dennis Silber, appellant.

*Bohl, Della Rocca & Dorfman, P. C.,* Albany (*John T. Casey* of counsel), for Gertrude Silber and others, appellants.

*O'Connell & Aronowitz,* Albany (*Peter Danziger* of counsel), for respondents.

## OPINION OF THE COURT

CARPINELLO, J.

This appeal presents the question of whether a landlord's knowledge of peeling and chipping paint in the leased premises constitutes constructive notice of a dangerous or defective condition such that the landlord can be liable for the lead poisoning of an infant tenant. Defendants are the former owners of a two-family residence located on Myrtle Avenue in the City of Albany.[1] Defendant Dennis Silber and his wife occupied the first floor of the subject premises from 1987 until 1992, at which time they relocated to the second floor. Prior to their relocating, the entire second-floor apartment was painted. When Silber and his wife moved out of the second-floor apartment in 1994, the walls were again repainted. Plaintiff Sallie Chapman signed a two-year lease for the second floor apartment on July 20, 1994, and plaintiffs moved into the apartment with their son, Jaquan, who was then a little over a year old. The flat was subsequently twice inspected by the City of Albany Building Department, which issued an unrestricted certificate of occupancy.

In September 1994, plaintiffs learned that Jaquan had a moderately elevated level of lead in his blood and were advised to have the test repeated in two months, at which time Jaquan continued to have an elevated blood lead level. Inexplicably, plaintiffs did not advise any defendant of Jaquan's condition until August 1995 when another blood test revealed a high level of lead in Jaquan's blood and he was hospitalized for several days of chelation therapy. On August 18, 1995, the apartment was inspected by the Albany County Health Department and defendants were first advised of the existence of lead paint hazards on interior and exterior wooden surfaces. Within several weeks thereafter, the condition was remediated to the sat-

---

1. On September 23, 1994, defendants Dennis Silber and Gertrude Silber conveyed their interests in the property to their co-owners, defendants Jay Silber and Judith Harrington, a fact not material to our determination.

isfaction of the Health Department. Nonetheless, plaintiffs moved out in September 1995 and filed suit the following December for claimed injuries relating to Jaquan's ingestion and/or inhalation of lead-based paint chips and dust from the apartment.

Plaintiffs argue that because some of defendants were physically present in the apartment during the lease term and allegedly observed peeling and flaking paint (in the window tracks and on the front porch) and because the lease contained a provision granting the landlord the right to enter the premises to inspect and perform repairs, defendants had constructive notice of the dangerous condition created by the existence of lead-based paint in the apartment. Supreme Court denied defendants' motions for summary judgment, finding a question of fact as to whether they had such constructive notice. Since we find that knowledge of peeling paint (even if defendants had such knowledge) is not the legal equivalent of constructive notice of the presence of hazardous lead-based paint, we reverse.[2]

Fundamentally, in order for a landlord to be liable for a defect in leased premises, the landlord must have actual or constructive knowledge of the defective condition and a reasonable opportunity to repair it (see, Putnam v Stout, 38 NY2d 607, 612). With respect to the issue of constructive notice, we begin by distinguishing this case from those cases involving lead poisoning of young children residing in multiple dwellings in New York City. Significantly, New York City has enacted legislation which, in effect, provides for constructive notice to landlords of hazardous lead conditions in those apartments erected prior to 1960 where landlords know that they are occupied by children six years old or younger (see, Administrative Code of City of NY §§ 27-2056.1 [a] [2]; 27-2056.4; see also, Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 647). In lead paint cases arising outside of New York City, however, it is now well established that knowledge by a landlord that a leased premises contains peeling and chipping paint is not constructive notice that a lead hazard exists on that premises (see, Powell v Mason, 267 AD2d 1025; Boler v Malik, 267 AD2d 998; Roberts v Pius, 267 AD2d 292; Hines v RAP Realty Corp., 258 AD2d 440, lv denied 93 NY2d 812; Busto v Tamucci, 251 AD2d 441, lv denied 92 NY2d 815; Lanthier v Feroleto, 237 AD2d 877). To the extent that plaintiffs suggest that this Court

---

**2.** There is no indication in the record that defendants had any actual notice of the presence of lead-based paint prior to notification by the Health Department.

should reject the rationale of these cases, as decided by the Second and Fourth Departments, we decline to do so.

Plaintiffs next contend that the requisite constructive notice can be imputed to defendants because they were contractually obligated to make repairs to the premises. Contrary to plaintiffs' assertions, a review of the preprinted lease reveals that the tenant was obligated to "maintain the apartment" and that she agreed to make all repairs "whenever the need results from the tenant's acts." The lease imposed no *duty* on the landlord to make repairs and merely reserved to the landlord the right to enter the premises for the purpose of inspecting and performing such repairs as "the landlord may decide is necessary." The reservation of the right to enter for the purpose of inspecting and repairing is insufficient to establish a landlord's constructive notice of a defect in the absence of a violation of a specific statutory obligation (*see, Hepburn v Getty Petroleum Corp.*, 258 AD2d 504, 505, *lv denied* 93 NY2d 812; *Quinones v 27 Third City King Rest.*, 198 AD2d 23, 24). We reject plaintiffs' argument that Public Health Law § 1373 and the regulations promulgated thereunder establish such a statutory obligation since that section imposes a duty on property owners to abate lead poisoning conditions only *after* written notice and demand are served by the Commissioner of Health (*see*, Public Health Law § 1373; 10 NYCRR part 67).

CARDONA, P. J., GRAFFEO, MUGGLIN and LAHTINEN, JJ., concur.

Ordered that the order is reversed, on the law, with costs, motions granted, summary judgment awarded to defendants and complaint dismissed.