[740 NYS2d 40]

PJETER TUSHAJ et al., Appellants, v ELM MANAGEMENT ASSOCI-
ATES, INC., Respondent. (And a Third-Party Action.)

First Department, April 4, 2002

**APPEARANCES OF COUNSEL**

*Alexander J. Wulwick* of counsel (*Newman, O'Malley & Ep-
stein, P.C.,* attorneys), for appellants.

*Loretta J. Hottinger* of counsel (*Gallina & Connolly*, attorneys), for respondent.

### OPINION OF THE COURT

ROSENBERGER, J.

In this case, we must decide if the managing agent of a residential apartment building, whose authority to undertake repairs in the building is limited by its contract with the building's owner, can be liable for injuries incurred by the owner's employee as a result of the agent's failure to undertake repairs that were within its limited contractual authority. Because the employee's safety was well within the scope of the agent's contractual obligations to the property owner and the injuries the employee suffered as a result of the agent's failure to fulfill those obligations were foreseeable, we hold that the agent can be liable for such injuries.

Plaintiff-appellant Pjeter Tushaj (Tushaj), the superintendent of a cooperative apartment building in the Bronx, was injured as a result of a fall from a makeshift scaffold in the basement of the building when a defective board in the scaffold gave way under him as he was investigating a pipe leak. The evidence presented to the jury showed that Tushaj was employed by third-party defendant Corlear Garden Housing Co., Inc. (Corlear), a cooperative housing corporation and the owner of the building. Corlear retained defendant Elm Management Associates, Inc. (Elm) to manage the day-to-day operation of the building. Although the precise contours of Elm's authority with respect to the building were not clear because defendant Elm was unable to locate a written contract with Corlear, Elm's Vice President Arnold Zabinsky (Zabinsky) testified that Elm's duties included making periodic inspections and ensuring that the building was maintained in good repair. Zabinsky also confirmed Tushaj's testimony that Elm had full authority to effectuate all repairs costing under $500. The undisputed evidence also showed that replacement of the defective boards would have cost no more than $12. The evidence also showed that, prior to his fall, Tushaj had informed two of Elm's building agents that the boards in the scaffold were defective and should be replaced, but that Elm took no action to repair or replace the defective boards.

At the conclusion of the trial, the jury found that Elm was 40% responsible and Tushaj was 60% responsible for the injuries Tushaj suffered and returned a verdict in favor of Tushaj and his wife, co-plaintiff Linda Tushaj, awarding Pjeter

$290,000 for past and future pain and suffering and past lost wages and Mrs. Tushaj $25,000 for loss of services. In a special verdict, the jury found, inter alia, that Tushaj was not a special employee of Elm[1] and that Elm had "complete and exclusive control of the management and operation of the building" on the day Tushaj was injured.

Elm moved pursuant to CPLR 4404 (a) for judgment notwithstanding the verdict on alternative grounds. The first was that, as the managing agent of the building, Elm could not be liable to a noncontracting third party, such as the plaintiffs, for any failure to fulfill a contractual obligation to Corlear because it did not exercise "complete and exclusive control" over the management and operation of the property. Elm maintained the evidence established that it did not exercise such control because its authority was limited to undertaking repairs costing less than $500. The second ground for the motion was that, if it did exercise such control, then Tushaj would have to be considered a special employee of Elm and he would thus be precluded by workers' compensation from obtaining damages for injuries incurred in the performance of services for Elm. Plaintiffs opposed defendant's motion and cross-moved to have the verdict set aside as insufficient to compensate plaintiffs for the injuries sustained and for a new trial solely on damages.

The trial court determined that the jury's finding that Tushaj was not a special employee was supported by sufficient evidence and would not be disturbed.[2] However, the court further determined that, because Elm's authority to effectuate repairs without the prior approval of the Corlear board of directors was limited to those repairs costing less than $500, the jury's finding that Elm was in complete and exclusive control of the building was contrary to the evidence. Relying on *Gardner v 1111 Corp.* (286 App Div 110, *affd* 1 NY2d 758), the court held that since Elm's spending authority was limited, it could not be liable in negligence to plaintiffs for its "mere nonfeasance."

---

1. A "special employee," under the Workers' Compensation Law, is defined as an individual who, while working as the general employee of one employer, is transferred for some period of time to the service of another employer (*see, e.g., Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557). A special employee is barred from bringing an action against his "special employer" for injuries suffered while performing services for the special employer because of the exclusive remedy of workers' compensation benefits provided by the general employer. (*Id.* at 555.) The issue of whether an individual is a special employee of a defendant is to be determined by the factfinder. (*Id.* at 558.)

2. Defendant has not raised this aspect of the trial court's determination and the issue of Tushaj's employment status is thus not before us.

Based upon the foregoing, the court granted Elm's motion for judgment notwithstanding the verdict and denied plaintiffs' cross motion as moot.

The sole issue before this Court is whether the dollar limitation on Elm's authority as managing agent to effectuate repairs without prior approval of the owner can serve to vitiate the jury's verdict that Elm is liable for plaintiffs' losses, according to the degree of its fault, resulting from its failure to undertake repairs that were within the scope of its automatic authority and its contractual obligation to Corlear. The decision of the Court of Appeals in *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579) informs our decision that the jury's verdict finding Elm liable should be reinstated.

In *Palka*, the plaintiff, a nurse employed by a hospital, was injured when a wall-mounted fan in the hospital fell from its mount and struck her as she was attending to a patient. The hospital had contracted with the defendant, Servicemaster Management Services Corporation, to develop and implement a maintenance program for the hospital premises. The Court determined that, although not specifically mentioned in its contract with the hospital, the defendant's contractual obligation to the hospital included the duty to carry out basic safety inspections and its failure to do so made it subject to liability for the plaintiff's injuries.

Eschewing problematic rhetorical distinctions between "nonfeasance" and "misfeasance" that controlled this Court's previous decision in *Gardner*, the Court in *Palka* analyzed the issue of whether the defendant's duties extended beyond its contractual relationship with the hospital to the noncontracting plaintiff based upon fundamental concepts of negligence law. Harking back to Chief Judge Cardozo's sage and well-worn instruction in *Palsgraf v Long Is. R.R. Co.* (248 NY 339, 344) that "[t]he risk reasonably to be perceived defines the duty to be obeyed" (*Palka*, 83 NY2d at 585), the Court in *Palka* held that, when a party contracts to inspect and repair, its duty extends to noncontracting individuals reasonably within the zone and contemplation of the intended services (*Palka*, 83 NY2d at 589). A defendant's obligation in such cases is defined "not merely by the contract but also in light of the duty imposed by law based on the interrelationship of all the parties, as framed by the evidentiary record (*id.* at 590). The Court cautioned that such extra-contractual duty is not open-ended and limitless, instructing that the "nexus for a tort relationship between the defendant's contractual obligation and the

injured noncontracting plaintiff's reliance [on defendant's performance of those obligations] and injury must be direct and demonstrable, not incidental or merely collateral." (*Id.* at 587.) Because Nurse Palka's safety was well within the scope of the defendant's contractual obligations to the hospital and the injuries she suffered as a result of defendant's failure to fulfill those obligations were clearly foreseeable, the Court determined that the jury verdict of liability in her favor should be upheld.

The reasoning of *Palka* is directly applicable here. Elm had a contractual obligation to inspect the property and to ensure that the building was maintained in good repair. Elm had complete and unfettered authority to undertake all repairs costing less than $500, which clearly included the authority to repair or replace the defective scaffold boards at a cost of no more than $12. Moreover, unlike the defendant in *Palka*, Elm had actual notice of the dangerous condition and still did nothing to fix it. Like the plaintiff in *Palka*, plaintiff Tushaj was among those limited individuals whose safety came within the scope of defendant's contractual obligations, and the risk of his being injured as a result of defendant's failure to fulfill those obligations was assuredly foreseeable.

Accordingly, the judgment of the Supreme Court, Bronx County (Yvonne Gonzalez, J.), entered June 21, 2000, granting the motion of defendant Elm Management Associates, Inc., for judgment notwithstanding the verdict and denying as moot plaintiffs' cross motion to set aside the verdict as to the amount of damages only, should be reversed, on the law, without costs, the judgment vacated, the jury's verdict reinstated, and the matter remanded for a determination of plaintiffs' motion as to damages.

TOM, J.P., MAZZARELLI and ELLERIN, JJ., concur.

Judgment, Supreme Court, Bronx County, entered June 21, 2000, reversed, on the law, without costs, the judgment vacated, the jury's verdict reinstated, and the matter remanded for a determination of plaintiffs' motion as to damages.