Hopper v Regional Scaffolding & Hoisting Co. (2004 NY Slip Op 50641(U))

[*1]

Hopper v Regional Scaffolding & Hoisting Co.

2004 NY Slip Op 50641(U)

Decided on June 7, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 7, 2004

Supreme Court, Bronx County
WILLIAM C. HOPPER and LAUREL HOPPER, Plaintiffs,
against
REGIONAL SCAFFOLDING & HOISTING CO., d/b/a. REGIONAL LADDER AND SCAFFOLDING CO., CONSTRUCTION SAFETY ENVIRONMENT, INC., WEST TERRACE CONSTRUCTION CORP., and SEA CREST CONSTRUCTION CORP. Defendants.
7884/98

Dianne T. Renwick, J.
Plaintiffs commenced this tort action seeking damages for, inter alia, injuries sustained by plaintiff William Hopper at a construction site while operating a "hoist." After a trial before this Court, the jury returned a verdict in favor of the injured plaintiff and his wife and against defendant Regional Scaffolding & Hoisting Co. Inc. ("Regional,") which constructed and maintained the hoist. The jury awarded plaintiffs money damages totaling 7.64 million dollars. Defendant Regional now moves, pursuant to CPLR §4404, to set aside the verdict on liability on the grounds that plaintiff failed to establish a prima facie case of tort liability and that the court improperly charged the jury on apportionment of liability; and, pursuant to CPLR §5501, to set aside the verdict on damages as excessive, i.e, deviating materially from reasonable compensation.
Factual and Procedural Background
At trial, plaintiff William Hopper alleged suffering a compression of the spinal cord and [*2]nerve damage as a result of his operation of a material hoist similar to an elevator. The hoist was used at a construction site to transport materials up and to carry debris down to the ground. These activities took place during the renovation of a hospital on Ward's Island in New York City. Defendant Regional, pursuant to a contract with CRSS (the project supervisor), installed and maintained the material and personnel hoists on the hospital building. Plaintiff William Hopper operated the material hoist every business day, riding up and down a 17-story structure at least 200 to 300 times daily, from sometime in 1991 until July 1997.
Eyewitnesses Testimony Regarding the June 1995 and July 1997 Accidents
Plaintiff William Hopper described two accidents that reportedly caused his spinal cord injuries. The first accident occurred on June 2, 1995, due to an alleged defect in the gate of the hoist, that developed about six months prior to the accident. The gate had to be opened each time plaintiff moved material or debris from one floor of the building to another. In order to open the gate, the hoist operator had to pull out a pin that should have released the gate with minimal force. The pin, however, often jammed, which caused plaintiff to use significant force to release the pin and open the gate. On the day of the accident, plaintiff attempted to open a gate of the material hoist while on the third floor of the building, when he felt a "severe, lightning pain . . . shooting through [his] legs, testicles, thighs and calves." After the accident, plaintiff went home, but returned to work the next day.
 During the six-month period prior to the June 2, 1995 accident, plaintiff often notified CRSS about the pin problem. CRSS then related the complaint to Regional. In addition, on a few occasions, plaintiff called Regional from a phone that was adjacent to the hoist. When a Regional repairman visited the site, the pin continued to jam. Several of plaintiff's co-workers, who operated the material hoist when plaintiff took a break, also experienced the problem with the faulty gate, about which they notified CRSS.
During the six-month period prior to the June 1995 accident, Michael Mazzara was the elevator mechanic from Regional who serviced the material and personnel hoists at the job site at Ward's Island. He estimated that he was at the job site at least once a week, and that Regional alone was involved in the maintenance of the personnel and material hoists. He claims that he never received any complaint about the defective gate (jamming pin). According to work tickets, there were five visits made by Regional to the job site to work on the material hoist between November 30, 1994 and March 27, 1995. The November 30, 1994 ticket shows the repair of the gate switch and operating leg. The December 6, 1994 ticket shows the repair of the gate switch. The January 23, 1995 ticket shows the repair of a track. The February 2, 1995 ticket shows the removal of sheets of polyethylene that had become caught in the hoist mechanism. The February 10, 1995 ticket shows the repair of the gate switch. Finally, the March 27, 1995 ticket shows the adjustment of the "holding mask" of the building.
The second incident occurred on July 8, 1997, due to what plaintiff described as "jolting" and "slamming" of the material hoist that developed about six months prior to the accident. The hoist would abruptly drop about a foot when Mr. Hopper adjusted the speed of the hoist from high to low speed and viceversa. On the day of the accident, the hoist made a sharp drop as it reached the 12th floor of the structure. "It felt like I had a sword go through my hips and spine," Mr. Hopper described. Every time plaintiff encountered the same problem with the material hoist, he notified the supervisor from A.J. Contracting, which had replaced CRSS as the project [*3]supervisor. A.J. Contracting would then notify Regional. Regional would address the problem, but the problem would reemerge, a few days later. Several of plaintiff's co-workers, who operated the material hoist when plaintiff took a break, also encountered the "slamming" and "jolting" movement of the hoist. They also reported the problem to the site supervisor from A.J. Contracting. After the July 8, 1997 accident, plaintiff did not return to the work site.
Albert Leon was the mechanic from Regional who, along with co-worker Tom Harrington, serviced the material and personnel hoists at Ward's Island, during the six-month period prior to the July, 1997 accident. Leon claimed that they visited the site to make repairs only in response to calls from the job site. Seven visits were made by Regional to the site for repair calls made between January 16, 1997 and June 8, 1997, according to the work tickets prepared by the mechanic who visited the site. Six of those visits involved problems related to the hoist "dropping in and out of high speed" or having "rough stops." Each time the mechanic addressed the problem by replacing the "solid state board" and leaving the hoist operating solely on low speed.
Expert Testimony Regarding Liability and Damages
With regard to liability, plaintiff presented the trial testimony of Jack Weldin, an engineer, who was declared an expert on the repair and maintenance of elevators and hoists. Based upon a review of Regional's repair records, photographs of the hoist and the pertinent deposition testimonies (plaintiff, his co-workers and employees from Regional, CRSS and A.J. Contracting), plaintiff's expert opined that the gate's pin became defective because of poor maintenance and repair. The expert explained that the mechanics from Regional failed to discover, during routine inspections and repair work on the gate, that the pin was malfunctioning because its spring mechanism was operating ineffectively due to a worn out screw and washer. With regard to the July 1997 accident (jolting and slamming hoist), Weldin opined that Regional negligently addressed the problem by simply replacing the "solid state board." What Regional was required to do, according to Weldin, was to replace the "1-EA board" and the "tachometer," since these were the instrumentalities of the hoist that measured and controlled speed. Defendant presented no expert to rebut the opinion of plaintiff's expert.
With regard to damages, the medical experts presented by plaintiff at trial opined that both the June 1995 incident (pressure exerted on the back by forcing the gate to open) and the July 1997 incident (pressure exerted on the back by the sudden jolt of the hoist) were contributing factors to plaintiff's injuries in the spinal cord. At the time of each accident, plaintiff suffered from a congenital defect known as cavernous (vascular) malformations in the spinal cord. Vascular malformations are localized collections of blood vessels that are abnormal in structure or number and prone to alter blood flow. The experts explained that both traumatic events caused the spinal cord to hemorrhage, resulting in nerve damage. Defendant's medical experts, however, opined that the blood hemorrhage was a congenital event that occurred prior to and unrelated to the traumatic accidents, i.e., that it was a natural occurrence from the vascular malformation.
Several treating physicians opined that plaintiff's spinal cord injuries are permanent in nature because spinal cord tissue does not regenerate. These injuries have caused plaintiff numbness and weakness in the legs and difficulty with bladder and bowel movements, the [*4]physicians reported. After the second hoist accident in 1997, surgery was conducted on plaintiff's spinal cord to remove the hemorrhage. It alleviated the problem, but plaintiff continues to have recurring, debilitating pain and reports bouts of depression. Plaintiff, however, plays golf about 40 times a year, does some household chores and drives a car. Plaintiff, however, cannot remain seated or standing for prolonged periods of time.
Apportionment of Liability Between the June 1995 and July 1997 Incidents
At trial, defendant Regional was represented by two different lawyers, as defendant had separate insurers at the time of each event. At the inception, the two counsel for defendant requested that the case be tried without apportioning liability between the two accidents. Reportedly, counsel for defendant wanted to avoid any apparent conflict of interest allegedly created by each trying to defend their client by shifting liability to the other accident that the other counsel defended. Both plaintiff and third-party defendant A.J. Contracting objected. This Court denied defendant's request, finding no apparent conflict and that third-party defendant A.J. Contracting would be prejudiced by the lack of apportionment since it was sued with regard to only the July 1997 incident. Subsequently, plaintiff presented his case with two distinct events and theories of negligent repair against Regional. After the end of the evidentiary phase of the trial, the two counsel for defendant again renewed their request that this Court not apportion liability and damages between the two accidents so as to maximize insurance for their client. This Court acceded to their demand since counsel for plaintiff had withdrawn his objection and both counsel for defendant agreed, on the record, to waive their client's right to apportion and to waive their client's right to raise the issue on appeal.[FN1]
Jury Verdict and Motion to Set Aside the Verdict
When the jury informed the Court it had rendered a verdict against Regional, including finding it negligent and finding such negligence a proximate cause of plaintiff's injuries, one of defendant Regional's excess carriers, with regard to the June 7, 1997 accident, delivered a letter in court to counsel for defendant disclaiming coverage due to the Court not instructing the jury as to apportionment of liability between the June 1995 and July 1997 incidents.[FN2] Both counsel for defendant then requested that the Court defer accepting the verdict sheet. Instead, they requested that the Court instruct the jury on apportionment of liability and then send the jury back to deliberate. The Court added an interrogatory to the verdict for the apportionment of fault between the 1995 and 1997 accidents. It then sent the jury back for further deliberations, after providing them the following supplemental instructions on apportionment:

The Court: Ladies and gentlemen . . . you have now found that the defendant [*5]Regional was negligent and that the defendant's negligence contributed to causing the accident and injury to plaintiff, and that their negligence was a substantial factor. Now you must apportion the fault between the 1995 accident and the 1997 accident. Weighing all the facts and circumstances you must consider the total fault or negligence, that is, of the 1995 accident and of the 1997 accident which contributed to causing the accident and injury to plaintiff and determine which percentage of fault is chargeable to each, if any.
In your verdict, you will state the percentage you find. The total of those percentages must equal 100 percent. . . . Then the question will read: What is the percentage of fault of defendant Regional Scaffolding and Hoisting Company, Inc., with regard to the June 2nd 1995 incident and the percentage of fault of Regional Scaffolding and Hoisting Company, Inc. with regard to the July 8, 1997 incident? The total percentage must equal 100 percent.
. . . [T]here is a line . . .as to the June 2nd 1995 accident, [and] as to the July 8, 1997 accident. You put a percentage; both have to equal 100 percent . . . .
Obviously, in making the determination, if you find a percentage you are finding that the company was negligent on that particular day and that their negligence on that particular day was a substantial factor in causing the plaintiff's injuries. If you find that, then you are to put a percentage for each . . .
Neither party objected to this apportionment charge. The jury then returned a verdict, including an answer to the additional interrogatory on apportionment. In response to the first interrogatory, the jury found that defendant Regional was negligent and that such negligence was a substantial factor in causing plaintiff's injuries. In response to the second interrogatory, the jury found that plaintiff William Hopper had not assumed the risk of injury by riding in the material hoist. In response to the additional interrogatory on apportionment, the jury allocated 50 percent of liability to the June 2, 1995 accident and 50 percent of liability to the July 8, 1997 accident. With regard to plaintiff William Hopper, the jury awarded him money damages of $300,000 for past and $1.5 million for future pain and suffering, respectively for periods of 7 and 28 years. It also awarded plaintiff William Hopper money damages of $1.1 million for past and $2.9 million for future loss of earnings, respectively for 7 and 16 years. In addition, it awarded plaintiff William Hopper money damages of $340,000 for future medical expenses. With regard to plaintiff Laura Hopper, the jury awarded her money damages of $300,000 for past and $1.2 million for future loss of service and society, respectively for periods of 7 and 28 years. Defendant Regional now moves to set aside the jury verdict on liability and damages.
 Discussion
[*6]A. Whether Plaintiff Made A Prima Case of Tort Liability?
The Court first addresses defendant's motion for an order setting aside the jury verdict on liability. Pursuant to CPLR §4404(a), "a court may set aside a verdict or any judgment entered thereon and direct judgment be entered in favor of party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separate issues where the verdict is contrary to the weight of the evidence." There must be no "valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" in order to set aside a judgment and direct judgment in favor of a party entitled to judgment. Walden v. Otis Elevator, 178 A.D.2d 878, 879 (3rd Dept. 1991). See also, Rhabb v. New York Hous. Auth. Hos., 41 N.Y.2d 200 (1976). A jury verdict should not be set aside and a new trial ordered "unless the jury could not have reached the verdict on any fair interpretation of the evidence." LePatner v. VJM Home Renovations, Inc., 295 A.D.2d 322, 323 (2nd Dept. 2002).
Defendant Regional argues that the CPLR §4404 motion should be granted because plaintiff failed to prove a prima facie case of negligence. In order to set forth a prima facie case of negligence, a plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty and injury suffered by the plaintiff which was proximately caused by the breach. Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308 (1980); Murray v. New York City Hous. Auth., 269 A.D.2d 288 (1st Dept. 2000); Iannelli v. Powers, 114 A.D.2d 157, 161 (2nd 1986). Regional asserts that it owed no duty to plaintiff. It is well established that the question of whether a given defendant owed a duty of care to a given plaintiff is "usually a legal, policy-laden declaration, reserved for a judge to make." Palka v. Servicemaster Management Serv. Corp.., 83 N.Y.2d 579, 583 (2002); Sapone v. Commercial Building, 262 A.D.2d 393 (2nd Dept. 1999).
At trial, plaintiff sought to prove defendant Regional liable for plaintiff's injuries based upon defendant's contract to install and maintain the personnel and material hoists. Generally, a contractual obligation alone will not give rise to tort liability in favor of a third party. See Ladue v. G&A Group, Inc., 260 N.Y.S.2d 215; Pieri v. Forrest City Enters, 238 A.D.2d 911 (4th Dept. 1997). However, the courts have recognized distinct exceptions where a party who enters into a contract to render services may assume a duty of care to persons outside the contract. A party to a contract may be liable to third persons where (i) the contracting party creates or exacerbates a harmful condition; (ii) the plaintiff detrimentally relies on the continued performance of the contracting parties' duties; or (iii) the contracting party completely assumes the another's duty to maintain the premises safely. Espinal v. Melvine Snow Contracting, 98 N.Y.2d 136 (2002); Palka v. Servicemaster Management Serv. Corp., 83 N.Y.2d 579, 587 (2002).
In this case, the Court finds that the alleged conduct by the contracting party did rise to the level of one or more of the specific exceptions to the general rule, so as to give rise to a duty to plaintiff. For instance, the maintenance contract's terms and the undisputed deposition testimony demonstrate that Regional bore an exclusive duty to keep the hoist in good repair. Regional had complete and unfettered authority to undertake all repairs. Significantly, the contract also required Regional to periodically inspect the hoist and make necessary repairs. Contrary to defendant's allegations, that defendant Regional made repairs primarily in response to [*7]calls for repairs from the job site is not dispositive in the circumstances presented here since Regional was the sole entity responsible for making such repairs. Nor can there be any dispute that plaintiff was undoubtedly among those limited individuals whose safety came within the scope of defendant's contractual obligations as the operator of the hoist and that the risk of being injured as a result of defendant's failure to fulfil those obligations was assuredly foreseeable. Indeed, the comprehensive duty undertaken by defendant Regional required its frequent presence on-site, putting it in a position to foresee the kind of harm-injury to an operator of the hoist. Considering all of the circumstances, it can be safely assumed that Regional undertook a comprehensive obligation that constituted an exclusive maintenance obligation and it could have expected all responsibility for the hoist to have passed to it. Cf. Hagen v. Gilman Mgmt Corp., __ A.D.3rd __, 770 N.Y.S.2d 890 (2nd Dept. 2004); Stevanovic v. TUC Mgmt. Co., 305 A.D.2d 133 (1st Dept. 2003); Tushajy v. 322 Elm Mgmt Assocs., 293 A.D.2d 44 (1st Dept. 2002).
Even if this Court were to find that Regional's contractual undertaking was not so comprehensive and exclusive as to give rise to a duty of care to plaintiff, this Court finds that defendant Regional was still liable to plaintiff for its alleged affirmative acts of negligence in connection with the maintenance and repair of the material hoist. As fully noted above, the evidence presented by plaintiff establishes that both plaintiff and his fellow hoist operators complained to their employer, who related the message to Regional about the malfunctioning of the hoist in 1995 and 1997. Although Regional responded to the complaints in 1995 and 1997, the problem continued for a period of six months before plaintiff was injured in 1995 and 1997. Defendant may be found to have assumed a duty of care to plaintiff on the basis of such evidence because it had a duty to perform its repairs properly. Cf. Abato v. Millar Elevator Servs., 298 A.D.2d 884 (4th Dept. 2002). See also, Cabrera v. Picker International, Inc., 1 A.D.3rd 308 (1st Dept. 2003);Stevanovic v. T.U.C. Management Co. Inc., 305 A.D.2d 133 (1st Dept. 2003). Moreover, there is a reasonable view of the evidence that supports a finding that Regional breached that duty based upon the testimonies of the hoist operators and engineering expert who opined that Regional failed to address the problem with the gate pin, which required a replacement of the worn out screw and washer, and it improperly addressed the slamming and jolting movement of the hoist by replacing the "solid state board" rather than the "1-EA board" and the tachometer. Thus, the evidence adduced at trial provides an ample basis for this Court to conclude that defendant Regional owed a duty to the injured plaintiff with regard to the maintenance of the material hoist, and for the jury to conclude that such duty was violated.
B. Whether Defendant Is Entitled to a New Trial Based on Alleged Erroneous Jury Charge on Apportionment of Liability?
Alternatively, defendant Regional argues that it is entitled to a new trial based upon the Court's alleged improper jury charge on apportionment of liability.
As a general rule, a motion for a new trial will not lie because of inadequate instructions given to the jury by the trial court in the absence of a proper exception. Kilburn v. Acands Inc., 187 A.D.2d 988 (4th Dept. 1992); Wonsch v. Snyder, 53 A.D.2d 1031 (4th Dept. 1976). In addition, the trial court is not entitled to set aside a verdict because of legal principles that it later decides should have been included in its charge. Kroupova v. Hill, 242 A.D.2d 218 (1st Dept. 1997). Rather, only when a set of instructions confuse or incompletely convey legal principles to be [*8]applied in a case is a new trial required. Maimonides Medical Ctr. v. Cynlp Boro Park Assocs., 231 A.D.2d 691 (2nd Dept. 1996). Compare Kalam v. K-Metal Fabrications, Inc., 286 A.D.2d 603 (1st Dept. 2001) with Mattei v. Figueroa, 262 A.D.2d 459 (2nd Dept. 1999).
Preliminarily, in this case, the Court finds that defendant Regional waived any right to raise an issue regarding the apportionment of liability between the June 1995 and July 1997 incidents. As fully explained above, during the initial charge conference, both counsel for defendant requested that the Court not apportion liability between the June 1995 and July 1997 incidents, which the Court grudgingly acceded to do after requiring both counsel for defendant to waive their client's right to raise an issue of apportionment. Moreover, no objection was raised after the apportionment charge was given as a supplementary instruction. Under the circumstances, it would be an abuse of discretion, in this Court's view, to review the issue in the interest of justice. Cf. Roebuck v. Duprey, 274 A.D.2d 620 (3rd Dept. 2001). Indeed, to do so would reward a defendant for the actions it brought upon itself and from which it now wishes to get a new trial.
In any event, even if, arguendo, the issue had been preserved for post-trial review, pursuant to CPLR §4404, the Court finds that the argument is devoid of merit. The record in this case does not establish the existence of substantial confusion occasioned by the court's supplemental instruction on apportionment so as to warrant a new trial. This Court instructed the jury using PJI 2:275 on the law of apportionment, adjusting it to the circumstances of this case. Moreover, contrary to defendant's allegations, this Court explicitly informed the jury during the supplemental charge that a percentage allocation of fault must be preceded by "a finding that [defendant] was negligent and that [defendant's] negligence on each particular date was a substantial factor in causing the plaintiff's injuries." The court's proper instruction conveyed to the jury that it was to allocate a percentage of fault as to each incident only upon a finding of negligence and proximate cause as to such incident, and it appears that the jury properly followed those instructions. During deliberations, the jury did not ask for a clarification of this charge, did not ask for any read back of testimony relevant to apportionment, and did not express any confusion or indicate that they did not understand the principle of apportionment.
Furthermore, contrary to defendant's allegation, the jury's expeditious rendering of a verdict on apportionment in no way indicates that it failed to give proper consideration to the issue. Indeed, such expeditious deliberation is not surprising since counsel for plaintiff presented his case, from beginning to end, on the theory of apportionment of liability between the June 1995 and July 1997 accidents. Under the circumstances, there are no grounds for setting aside the verdict and ordering a new trial based upon the charge given to the jury on apportionment. Cf. Mattei v. Figueroa, 269 A.D.2d 459 (2nd Dept. 1999).
C. Whether The Jury's Damages Award Was Excessive In Any Respect?
The Court now turns its attention to defendant's motion, pursuant to CPLR §5501, to set aside as excessive the damages awarded to plaintiff William Hopper for past and future pain and suffering and past and future loss of earnings, and the damages awarded to plaintiff Laura Hopper for past and future loss of service and society. The standard for judicial review of the size of jury awards is codified in CPLR §5501-c, which provides in pertinent part that "the appellate division shall determine that an award is excessive or inadequate if it deviates [*9]materially from what would be reasonable compensation." See Nicastro v. Park, 113 A.D.2d 129, 136-137 (2nd Dept. 1985). Although ostensibly directed to the Appellate Division, the "deviates materially" standard in CPLR §5501-c also applies at the trial court level. See, Ashton v. Bobruitsky, 214 A.D.2d 630, 631 (2nd Dept. 1995); Ynya v. Ide Hynundai, Inc., 209 A.D.2d 10, 15 (2nd Dept. 1995); Cochetti v. Gralow, 192 A.D.2d 974, 975 (3rd Dept. 1993); Shurgan v. Tedesco, 179 A.D.2d 805 (2nd Dept. 1992).
This Court is of the opinion that the jury award of 1.8 million ($300,00 for past and $1.5 million for future) pain and suffering is excessive. Although plaintiff sustained a serious injury of the spinal cord, with symptoms of significant pain, among others, plaintiff William Hopper is still able to walk, drive himself around town, do light work at home and play 40 rounds of golf every year. Under the circumstances, the award for past and future pain and suffering of $300,000 (for 7 years) and $1.5 million (for 28 years) "deviates materially from what would be reasonable compensation" to the extent they exceed $1.3 million ($300,000 for past and $1.0 million for future pain and suffering). Cf. Orellano v. 29 East 37th Street Realty Corp., __ A.D.2d __, 772 N.Y.S.2d (1st Dept. 2004) (damages award of $5.5 million for past and future pain and suffering found excessive, and reduced to $750, 000 in case where a 47-year old worker suffered comminuted fracture of the tibia and fibula that required several surgeries during a two-month hospital stay and resulted in partial permanent disability).
The Court is also of the opinion that the damages awarded to plaintiff William Hopper for both past and future loss of earning of $1.1 million (for 7 years) and $2.9 million (for 16 years) are excessive and based upon the speculative premise that he would not be employed to any significant degree in the future. On the contrary, based upon the testimony elicited from plaintiff William Hopper, of his college education, work experience and ability to walk, play golf and drive, there is no basis to conclude that he would not be able to obtain other type of employment albeit of a sedentary nature. The evidence in the case would support an award for loss of past and future loss of earnings in the respective sums of $400,000 (7 years) and $900,000 (16 years).
Finally, this Court finds that the awards of $300,000 (for 7 years) and $1.2 million (for 28 years) for the damages which the wife (Laura Hopper) sustained by the loss of her spouse's service and society are excessive under the circumstances of this case. Laura Hopper presented only some evidence of change of life caused by her spouse's diminished ability brought about by the spinal cord injuries. For instance, Mrs. Hopper was not required to furnish significant home care for plaintiff's recuperation or to take over household tasks previously performed by him. On the other hand, plaintiff and his wife continue to have sexual relations, albeit with some difficulty. The alleged bouts of depression and anxiety that have affected plaintiff's relationship with his wife and children are based solely upon his suggestive complaint and wholly unsupported by any medical evidence. Under the circumstances, the evidence would support an award of $400,000 ($100,000 for past and $300,000 for future) loss of service and society. Cf. Walsh v. State of New York, 232 A.D.2d 939 (3rd Dept. 1996) ($185,000 award for wife's derivative claim for past and future loss of service and consortium upheld). See also, Bernstein v. Red Apple Supermarkets, 227 A.D.2d 264 (1st Dept. 1996).
Conclusion
For the foregoing reasons, it is hereby
Ordered that defendant's motion, seeking to set aside the jury verdict on liability, based [*10]upon plaintiff's alleged failure to establish that defendant owed a duty to plaintiff, is denied as devoid of merit; it is further
Ordered that defendant's motion, seeking to set aside the verdict on liability based upon the alleged improper jury instruction on apportionment, is denied as unpreserved and devoid of merit; it is further
Ordered, that defendant's motion to set aside the damage awards as excessive is granted but only to the extent of ordering a new trial on the issue of damages only, unless within 30 days, after service upon plaintiffs of a copy of this decision and order, with notice of entry, plaintiffs shall serve and file in the office of the Clerk of the Supreme Court, Bronx County, a written stipulation consenting to decrease the verdict on damages to William Hopper from the sum of $300,000 and $1.5. million for past and future pain and suffering, to $300,000 and $1.0 million, for periods respectively of 7 years and 28 years; to William Hopper from the sum of $1.1 and$ 2.9 for past and future loss of earnings to $400,000 and $900,000 for periods respectively of 7 years and 16 years, to Laura Hopper from the sum of $300,000 and 1.2 million for past and future loss of service and society to $100,000 and $300,000, for periods respectively of 7 and 28 years;[FN3] it is further
Ordered that, in the event plaintiffs so stipulate, then the judgments, subject to any further reductions as determined after the collateral source hearing as scheduled below, so reduced and amended shall be entered by the Clerk of the Court accordingly. The parties shall appear on June 14, 2004, at 10:00 A.M.,851 Grand Concourse, Bronx, New York, 10451, in Room 809, for a collateral source hearing.
This constitutes the Decision and Order of the Court.
Dated: June 7, 2004__________________________
Bronx, New York Hon. Dianne T. Renwick, J.S.C.
Footnotes

Footnote 1: By this time, third-party defendant A. J. Contracting had been dismissed from the case. The evidence established that plaintiff William Hopper had been working as an employee of third-party defendant when he was injured on July 8, 1997. Thus, Workers' Compensation Law shielded third-party defendant from any lawsuit brought by its employee.

Footnote 2: A representative for each insurance carrier was present in the court room during all the proceedings in the case.

Footnote 3: The award of $340,000 for future medical services shall remain unchanged since defendant did not move to reduce it and this Court sees no valid basis for doing so.