OPINION OF THE COURT
Per Curiam.
Judgment entered December 15, 2003 affirmed, with $25 costs.
Plaintiff, the superintendent of a commercial building, was employed by the building owner, Westchester Town Associates, who was not a party to this lawsuit. The owner’s managing agent, defendant Woodmere Custom Developers, “overs[aw] construction and management, including collecting rents, paying bills, making sure the building was functioning properly” and directing “general repairs.” The evidence properly admitted at trial (see CPLR 311.7 [a]) demonstrated that Philip Broad-man, Woodmere’s principal, had for many years been aware of a “very obvious,” progressively worsening leaking oil condition from a defective oil tank which repeatedly resulted in the collection and pooling of oil until it “covered” the entire boiler room floor at depths approaching four inches. Broadman directed the installation of “duck boards” on the floor, which plaintiff would lift and stack when sweeping the leaking oil into a draining pit. Plaintiff was injured as a result of a slip and fall while lifting the boards, which had become “vacuum stuck” to the basement floor. At the bifurcated trial, the jury found that defendant was 65% responsible and plaintiff was 35% responsible.
Based on this record, the jury reasonably could find that plaintiffs safety was within the scope of defendant’s contractual obligations to the property owner and the injuries suffered, were the result of defendant’s failure to fulfill those obligations (see Tushaj v Elm Mgt. Assoc., 293 AD2d 44 [2002]). Defendant had a contractual obligation to inspect the property and to ensure that the building was maintained in good repair, including the broad authority to undertake necessary repairs. Although Broadman was not “required” to do so, he “thought” he would discuss repairs costing in excess of $2,000 with the owner, but *59 conceded that “there was no set limit” on cost (see Stevanovic v T.U.C. Mgt. Co., 305 AD2d 133 [2003]). The record shows that although Broadman had actual notice of the dangerous condition, he failed to conduct any inquiry regarding the cause of the leak or the cost to repair the oil tank and did nothing to fix it (see Tushaj v Elm Mgt. Assoc., supra). Nor may defendant avoid liability for its demonstrated negligence by invoking case authority holding that “[a] maintenance worker has no claim at law for injuries suffered from slipping on a substance that she was hired to remove” (Marku v Moore Capital Mgt., 7 AD3d 443, 444 [2004]; see also Kowalsky v Cenreco Co., 264 NY 125, 128 [1934]), since the evidence supports a finding that the accident was caused not only by the presence of the oil puddle that plaintiff was assigned to “sweep up,” but also by plaintiffs precarious positioning on the wooden planks that Broadman directed to be placed over the oil spills as a dubious stopgap measure in response to the ongoing and unaddressed .oil burner leak (see generally Wray v 654 Madison Ave. Assoc., L.P., 253 AD2d 394 [1998]).
Finally, the issue of whether plaintiff was a special employee of defendant was properly submitted to and reasonably resolved by the jury (see Tushaj v Elm Mgt. Assoc., supra).