## Commissioners of the State Ins. Fund v Greystone Mgt. Solutions

2024 NY Slip Op 31929(U)

June 3, 2024

Supreme Court, New York County

Docket Number: Index No. 450504/2016

Judge: Dakota D. Ramseur

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. DAKOTA D. RAMSEUR**

*Justice*

-----------------------------------------------------------------------------X

COMMISSIONERS OF THE STATE INSURANCE FUND,
AS ASSIGNEE OF FERNANDO SALGADO, ASSIGNOR,

Plaintiff,

- v -

GREYSTONE MANAGEMENT SOLUTIONS, GREYSTONE
& CO., INC.,

Defendant.

-----------------------------------------------------------------------------X

GREYSTONE MANAGEMENT SOLUTIONS, GREYSTONE &
CO., INC.,

Plaintiff,

-against-

MCDONALD'S USA, LLC

Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| PART | 34M |
| INDEX NO. | 450504/2016 |
| MOTION DATE | N/A, N/A, 01/05/2024 |
| MOTION SEQ. NO. | 003 004 005 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595855/2023

The following e-filed documents, listed by NYSCEF document number (Motion 003) 89, 90, 99, 111, 114, 115, 116, 117, 118, 122

were read on this motion to/for                    SEVER ACTION                    .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 91, 92, 93, 94, 95, 96, 97, 98, 100, 112

were read on this motion to/for                    SEVER ACTION                    .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 101, 102, 103, 104, 105, 106, 107, 108, 109, 110

were read on this motion to/for                    RENEWAL                    .

     In April 2016, plaintiff Commissioners of the State Insurance Fund, as the assignee of Fernando Salgado, commenced this action against defendants Greystone Management Solutions and Greystone & Co., Inc. (hereinafter, "Greystone") to recover for personal injuries Salgado suffered during a slip and fall that took place in a Penn Station walkway that they allegedly manage through a contract with the Metropolitan Transit Authority (the "MTA"). In January 2021, Greystone moved for summary judgment, which the Court resolved by Decision and Order

dated June 24, 2022 (the "June 2022 Decision"). In denying said motion, the Court found issues of fact as to whether, under the MTA contract, Greystone "entirely displaced" MTA's duty to maintain the premises where plaintiff allegedly injured himself. (NYSCEF doc. no. 79, Decision and Order.) On June 11, 2021, while the motion was *sub judice*, plaintiff filed the note of issue. More than two years later, in September 2023, Greystone commenced a third-party action against McDonald's USA, LLC (as Salgado's employer and a tenant on the premises), asserting causes of action for contractual and common law indemnity, common law contribution, and failure to procure insurance. In motion sequence 003, plaintiff moves to sever Greystone's third-party action against McDonalds from the main action pursuant to CPLR 603 and 1010; in motion sequence 004, McDonalds likewise moves to sever the two actions under the same civil practice rules; and in motion sequence 005, Greystone moves pursuant to CPLR 2221 (e) for leave to renew the Court's June 2022 Decision. Each motion is opposed. Herein, the Court consolidates these motions for resolution. For the following reasons, plaintiff and McDonald's motions to sever are granted; Greystone's motion for leave to renew is granted, and upon renewal, the Court adheres to its original decision.

## BACKGROUND

On June 17, 2013, Fernando Salgado slipped and fell in a walkway adjacent to a McDonald's restaurant located within Penn Station on the Long Island Rail Road ("LIRR") level in Manhattan, New York. According to plaintiff, who was employed by McDonald's at the time, he exited the restaurant's premises to retrieve supplies from a storage room located elsewhere in Penn Station and slipped on a mixture of grease/oil and water. (NYSCEF doc. no. 57 at 45, plaintiff deposition transcript.) Garry Ryan, a project executive employed by Greystone to manage the company's MTA account, testified that their contract covered all MTA-owned properties or, in all, about 4,000 leases, licenses, and permits in their portfolio, including the McDonald's within Penn State (although not Penn Station itself). (NYSCEF doc. no. 58 at 15, Ryan deposition transcript.) As cited by the Court in its June 2022 Decision, Ryan described Greystone's role as such: "We manage the agreements as opposed to the tenants or facilities themselves. So we bill and collect rent, we make sure that people have insurance in place, that the correct tenant is on-site and is maintaining the premises." (*Id*. at 16.) In addition, Ryan explained that part of the responsibilities and duties of account managers with Greystone would be to field tenant complaints or concerns. (*Id*. at 28.)

Before plaintiff's accident, Ryan testified that McDonald's had reported leaks to Greystone. (*Id*. at 73.) He explained that Greystone would likely have been in touch with the LIRR to investigate possible solutions to help McDonald's but that Greystone "would not conduct any investigation. The Rail Road is the owner and manager of the property, and they would conduct an investigation as to the possible source or origin of the leak." (*Id*. at 77.) The Court's underlying decision also cited various provisions of Greystone's proposed service agreement with the MTA. Sections 3. 4 (b), (e), and (f) provide:

> "b. Performing Periodic Site Inspections
> …
> The Director of Tenant Management [defendant's employee] identifies issues and responds by establishing a Yardi [an MTA

database] Tenant Action, if necessary, and assigning and monitoring the enforcement, correction or document needed to remedy any issues.

e. Investigating and Resolving Complaints.
The Project Executive [a GREYSTONE employee] will investigate and resolve complaints received from Agency personnel and the public. If necessary, the RED Contract Manager [an MTA employee] will immediately be contacted on all such matters and a Tenant Action will be created in Yardi to track follow-up."

f. Responding to Emergency Conditions on a 24-Hour, 365 Day Per Year Basis
Greystone will continue to serve as the primary contact to licensees regarding emergency situations and will continue [to] respond to emergency calls on a 24/7, 365 day per year basis. We will maintain our on-site response time to be within one hour, if during normal business hours, or three hours, if during non-business hours. (NYSCEF doc. no. 60, proposed service agreement.)

In its June 2022 Decision, the Court cited *Espinal v Melville Snow Contractors, Inc.* (98 NY2d 136, 138 [2002]) for the proposition that, ordinarily, a party's contractual obligation to another will not, standing alone, give rise to tort liability in favor of a third party, unless that contracting party assumed the other party's duty to maintain a safe premise. (*See* NYSCEF doc. no. 79 at 3; *see also Church ex rel. Smith v Callanan Indus., Inc.*, 99 NY2d 104, 111 [2002] ["Ordinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor"].) The *Espinal* Court identified three instances in which a contracting party may become liable to a third party for negligence, one of which is where, through the contract, the contracting party has "entirely displaced" the other's duty. (*Id.*) In finding issues of fact as to whether Greystone's duty entirely displaced the MTA's duties, the Court relied on Ryan's testimony and the above contractual provisions, specifically, those concerning Greystone's ability to resolve complaints concerning the premise, the absence of a duty to report complaints to the MTA, and its broad authority to investigate and resolve claims. (*Id.*) Its holding relied upon *Stevanovic v T.U.C. Mgmt. Co.* (305 AD2d 133, 134 [1st Dept 2003]), which found issues of fact where the management contract afforded the defendant broad authority to maintain the premise and make ordinary repairs, and *Tushaj v 322 Elm Mgmt. Assocs., Inc.* ( 293 AD2d 44, 48 [1st Dept 2002]), which applied the exception where the defendant had an obligation to inspect the property to ensure it was maintained in good repair and the authority to undertake all repairs costing less than $500.

Greystone premises their motion to renew under CPLR 2221 (e) on the affidavit of David Florio, who worked as the MTA's Director of Real Estate Transactions and Operations from June 2017 through March 2022, when he became the MTA's Chief Real Estate Transactions and Operations Officer. He avers that, under their contract, (1) Greystone has been acting as the MTA's tenant manager for the 4,000 accounts under the MTA Real Estate Department's purview since 2011 (NYSCEF doc. no. 107 at ¶¶ 3, 5, Florio affidavit), (2) the Real Estate Department

had no maintenance oversight responsibilities over common areas located outside of McDonald's (*id*. at ¶ 6), (3) the contract and scope of services did not require Greystone "to investigate complaints, inspect conditions, maintain, operate, or repair any premises, and certainly not in the common areas within Penn Station" (*id*. at ¶ 7), (4) Greystone "was not responsible for inspecting, investigating, and/or remedying conditions, including wet conditions or leaks, within these common areas within Penn Station, including the location that is the subject of this underlying action" (*id*. at ¶ 8.)

As described above, while Greystone's motion for summary judgment was pending *sub judice*, plaintiff filed the note of issue on June 11, 2021. Despite being aware of McDonald's presence as a potentially interested party in this litigation from its infancy, Greystone did not commence a third-party action until more than two years after the note of issue was filed and more than seven years after plaintiff served its complaint.

## DISCUSSION

*Motion to Renew Under CPLR 2221 (e)*

CPLR 2221 (e) provides that a motion for leave to renew (1) shall be identified specifically as such; (2) shall be based upon new facts not offered on the prior motion that would change the prior determination; and (3) shall contain reasonable justification for the failure to present such facts on the prior motion. "While it is true that a motion for leave to renew is intended to direct the court's attention to new or additional facts which, although in existence at the time the original motion was made, were unknown to the movant…the rule is not inflexible and the court, in its discretion may grant renewal, in the interest of justice, upon facts known to the movant at the time of the original motion." (*Rancho Santa Fe Assn. v Dolan-King*, 36 AD3d 460, 461 [1st Dept 2007] [internal citations omitted].) While there remains a statutory prescription to present new evidence, the court may grant a renewal motion so as not to "defeat substantive fairness." (*Henry v Peguero*, 72 AD3d 600, 602 [1st Dept 2010]; *Ross v Lewis*, 181 AD3d 423, 424 [1st Dept 2020].)

Here, Greystone has not presented a reasonable justification for its failure to include David Florio's affidavit in the original motion. Counsel for Greystone merely offers, without supporting evidence, that "Greystone had to go through various entities and individuals at the MTA in order to obtain this evidence" and that "Greystone was incapable of obtaining Mr. Florio's affidavit prior to the deadline to submit their motion for summary judgment due to miscommunication between Greystone and other relevant parties…in scheduling and meeting Mr. Florio." (NYSCEF doc. no. 102 at ¶¶ 17 and 18, Yapchanyk affirmation in support.) Such vague and unsupported assertions are precisely those upon which courts cannot find a reasonable justification. (*See Wang v LaFrieda*, 189 AD3d 732, 732 [1st Dept 2020] ["Plaintiff also failed to provide a 'reasonable justification' for their failure to submit the Leetsi affidavit in timely manner. While plaintiff made some vague assertions regarding their attempts to contact Leetsi earlier, they have not put forth any specific information regarding their efforts to locate her or obtain the affidavit."]) This is especially true given that Greystone filed their motion for summary judgment on January 12, 2021, weeks before the Court mandated February 1, 2021 deadline to file the notice of issue (which, to that point, had already moved back on several

occasions) and months before the time to file dispositive motions had elapsed once plaintiff had actually filed the note of issue. (*See* NYSCEF doc. no. 51, status order entered 11/16/20.) Even though plaintiff argued as such in its opposition, Greystone does not address this deficiency in their reply papers.

Nonetheless, Greystone contends that the Court may still grant leave to renew to avoid defeating substantive justice. In their view, because Florio avers that Greystone was not responsible for investigating complaints, inspecting conditions, and maintaining or repairing any part of premises, including any common areas, any and all issues of fact identified by the Court in its June 2022 Decision have been eliminated. In opposition, plaintiff contends that, even in cases concerning the substantive justice/fairness doctrine, Greystone must still have proffered a reasonable excuse, which it did not. The Court agrees. In *Global Liberty v Ins. Co. v Laruenceau* (187 AD3d 570, 571 [1st Dept 2020]), *Ross v Lewis* (181 AD3d at 424), and *Henry v Peguero* (72 AD3d at 602), the First Department made clear that it is the statutory requirement to present *new evidence* that need not be strictly applied so as to defeat substantive fairness. These cases do not excuse, as Greystone's position would have it, a moving party's failure to meet the statutory requirement to provide a reasonable justification for omitting said facts, new or not, on the previous motion. Indeed, in *Henry*, the First Department noted that the new evidence requirement of CPLR 2221 (e) may be relaxed only where the movant presents a reasonable excuse in the first instance. This result is consistent with Second Department caselaw, which uniformly holds that the Supreme Court lacks the discretion to grant renewal where the movant has not provided a reasonable justification. (*See Greene v New York City Housing Authority*, 283 AD2d 458, 459 [2d Dept] ["In light of the mandatory language used by the Legislature in CPLR 2221 (e) (3), we reject the plaintiffs' contention that the Supreme Court had discretion to grant renewal, notwithstanding their omission of a reasonable justification for their failure to present new facts"]; *Cando v Ajay Gen. Contr. Co. Inc.*, 200 AD3d 750, 755 [2d Dept 2021].) Accordingly, Greystone's motion for leave to renew is granted, and upon renewal, the Court adheres to its previous decision.

*Plaintiff's and McDonald's Motions to Sever Under CPLR 603 and 1010*

Under CPLR 603, entitled "Severance and separate trials," courts may sever claims or order separate trials on any claims or issues to further convenience or avoid prejudice to the parties. (*See* CPLR 603.) Similarly, CPLR 1010, entitled "Dismissal or separate trial of third-party complaint," provides courts with the discretion to order separate trials of third-party claims. The rule requires that, in exercising their discretion, courts "shall consider whether the controversy between the third-party plaintiff and the third-party defendant will unduly delay the determination of the main action or prejudice the substantial rights of any party." (CPLR 1010.)

Here, severance is warranted. First, Greystone waited until approximately seven years after plaintiff filed the underlying action to commence their third-party action against McDonald's. Greystone did so even as plaintiff's complaint alleged that Fernando Salgado was employed by a McDonald's franchise located within one of the MTA-owned properties to whom they provided service. It continued waiting until nearly two years after plaintiff filed the note of issue, which, as plaintiff's point out, was only filed after the parties engaged in an extensive discovery process. Even after filing the third-party action, Greystone's conduct has not provided

any reassurances that it is willing to conduct the necessary discovery in the third-party action with the necessary speed to avoid an undue delay. Plaintiff's counsel agreed to two stipulations in which Greystone's opposition would be adjourned to January 8, 2024, and January 23, 2024, respectively. (NYSCEF doc. no. 100 and 112, stipulations.) Notwithstanding the second return date, Greystone filed its opposition to the motion on January 29, 2024, one day before the motion was made returnable. (*See* NYSCEF doc. no. 114.) Moreover, despite receiving McDonald's Demand for Bill of Particulars and Omnibus Discovery Demands on October 30, 2023, Greystone only supplied a Bill of Particulars on January 29, 2024. Lastly, since the main action involves factual issues as to whether MTA's duty to keep the premises safe was "entirely displaced" by Greystone's contractual duties, and the third-party action involves contractual issues such as indemnification, severance of the third-party action is appropriate. (*See Torres v Visto Realty Corp.*, 106 AD3d 645, 645 [1st Dept 2013] ["Since the main action involves the factual issue whether there was a defect in the sidewalk that contributed to plaintiff's injury, and the third-party action involves lease contract issues such as indemnification, and plaintiff, who has filed a note of issue, would be prejudiced by the delay caused by the need for discovery in the third-party action, severance of the third-party action was appropriate."]

Accordingly, for the foregoing reasons, it is hereby

ORDERED that defendants Greystone Management Solutions and Greystone & Co., Inc.'s motion for leave to renew pursuant to CPLR 2221 (e) is granted, and upon renewal, the Court adheres to its June 2022 Decision; and it is further;

ORDERED that plaintiff Commissioners of the State Insurance Fund and third-party defendant McDonald's USA, LLC's motion to sever under CPLR 603 and 1010 is granted; and it is further

ORDERED that the third-party action under Index No. 595855/2023 is severed from Index No. 450504/2016; and it is further

ORDERED that the plaintiff serve a copy of this order with notice of entry on the Clerk of this Court (60 Centre Street, Room 141B); and it is further

ORDERED that the Clerk of this Court, upon service of a copy of this order with notice of entry, shall sever the action and record such action in the Clerk's records; and it is further

ORDERED that within 30 days from entry of this order, counsel for plaintiff shall serve a copy of this order with notice of entry upon the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that upon the service of such documents, the Clerk of the General Clerk's Office shall mark the court's records to reflect the separate actions in Part 46; and it is further

ORDERED that service upon the Clerk of this Court and the Clerk of the General Clerk's Office shall be made in accordance wit the procedures set forth in the Protocol on courthouse and

**450504/2016 Motion No. 003 004 005**                                                                 **Page 6 of 7**

County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on this court's website at the address www.nycourts.gov/supctmanh); and it is further

      ORDERED that counsel for plaintiff shall serve a copy of this order, along with notice of entry, on all parties within thirty (30) days of entry.

20240604162506DRAMSEURA827B0A963848138C74B5502357C51F

| 6/3/2024 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **DAKOTA D. RAMSEUR, J.S.C.** | |
| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | DENIED | GRANTED IN PART | X | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 7]